[No. 8944.  In Bank. — November 25, 1885.]

HENRY L. PIERCE, APPELLANT, v. E. GUITTARD
ET AL., RESPONDENTS.

TRADE-MARK — INFRINGEMENT. — Where a person has established a business in the manufacture and sale of goods, and carries it on under a given name or with a particular mark, whether the words and devices adopted by him constitute a trade-mark or not, another person cannot assume the same name or mark, or the same with a slight alteration, in such a way as to induce others to deal with him in the belief that they are dealing with the person who has given a reputation to the name or mark.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*Charles P. Eells*, and *John Sherwood*, for Appellant.

*Wheaton & Harpham*, for Respondents.

Ross, J. — The complaint alleges that the plaintiff for more than thirteen years next preceding the commencement of this action has been, and still is, engaged in the manufacture and sale of a chocolate called and known as "German Sweet Chocolate," — "the name of German being that of one Samuel German, who was on and before the 19th of June, 1867, employed, and who has ever since been and is now employed, by plaintiff in the manufacture of the said chocolate, and who on said 19th of June, 1867, for a valuable consideration, duly assigned and transferred to the plaintiff the exclusive right to use his, the said German's, name upon the said chocolate so as aforesaid made and manufactured, and upon the labels and cases containing the same, and generally to use the said name of German as a trade-mark therefor"; that the chocolate has long been well and favorably known in the trade and to the public generally by the name of "German Sweet Chocolate," and has been and is now

extensively sold under that name, and now is and for a long time has been the source of large profits to the plaintiff; that during the time mentioned it had been and still is put up by the plaintiff in the form of a cake of about five inches in length and two and one half inches in width, each cake inclosed in a wrapper and label, which has on a gilt background a green panel with arabesque border, in the center of which is a white star surrounded by the words "German Sweet Chocolate"; that the said wrapper and label with the said words and figures thereon were appropriated by plaintiff to his exclusive use as a trade-mark to designate the origin and ownership of said " German Sweet Chocolate," and has been such ever since; that the defendants for more than four years last past have been and still are manufacturing and selling an inferior article of chocolate in the form of a cake similar in shape to the "German Sweet Chocolate" of the plaintiff, put up in wrappers and labels of about the same size and shape as the plaintiff's, and bearing the words " Sweet German Chocolate" in a green panel on a yellow or gilt background, with arabesque pattern; that the wrappers and labels of the defendants are fraudulent imitations of those of the plaintiff, and were and are calculated and intended by the defendants, and each of them, to deceive dealers and purchasers, and to mislead them into using their inferior article, instead of and as and for the chocolate manufactured by the plaintiff, and has had and continues to have that effect to the serious injury of the plaintiff.    And the plaintiff prays a decree restraining defendants from making, or causing to be made, or in any manner using wrappers or labels having upon them the words " Sweet German Chocolate," or any words, figures, or designs resembling or imitating the words, figures, and designs used by the plaintiff as his trade-mark, and also for an accounting of profits alleged to have been made by defendants out of the alleged fraudulent sales, and for damages.

At the trial plaintiff was nonsuited, and the appeal is from the judgment given against him, as also from an order refusing him a new trial.

The plaintiff after giving evidence that for many years he has manufactured at Dorchester, Massachusetts, a chocolate under the name of "German Sweet Chocolate," put up in the form and manner stated in the complaint, and sold throughout the country, testified as follows: " I applied the name of 'German Sweet Chocolate' to that chocolate at Dorchester in 1866. I applied it because it was a good name, and I wished to place upon the market a new brand of sweet chocolate of improved manufacture. I got the name from Samuel German, and he authorized me to use it. In June, 1866, — about the time I commenced the manufacture, — I obtained it because I wanted to use his name, and I wanted his authority to use it. In the earlier years of the manufacture by me of 'German Sweet Chocolate,' Samuel German was personally engaged in the manufacture of it, but owing to his advancing age and infirmities, he has been given lighter work to do since. The 'German Sweet Chocolate' has been sold and known to the trade under that name, and by the labels I have mentioned, since 1866. At the time I had adopted the name and those labels no other chocolate was sold or known to the trade under similar symbols, or under a name of which the word 'German' formed a part. I appropriated the name 'German Sweet Chocolate, made by S. German, Dorchester, Mass.,' to my exclusive use, as a trade-mark for that chocolate, with the design, symbol, and device as appear by the labels I have mentioned, and I still claim the same, as I always have, as my trade-mark."

The witness gave further testimony tending to show that he has ever since sold his chocolate extensively throughout the United States and received pecuniary profits therefrom, and that the chocolate sold by the defendants under the name of "Sweet German Chocolate"

is of inferior quality.   Other witnesses testified that the chocolate sold by defendants is inferior to that of the plaintiff's, and is bought by the jobbers at a less price than plaintiff's chocolate can be bought for, and is retailed by them to the public as and for the "German Sweet Chocolate" of the plaintiff.

A witness named Doyle testified on behalf of the plaintiff that he was in the employ of defendants as foreman at the time their label was gotten up, and had formerly been connected with a large house in New York that had the New York agency for Walter Baker & Co., of which firm the plaintiff was sole member, and that he was consulted by defendants in regard to the name to be put on their label; that defendant Guittard asked him what Walter Baker & Co. called their chocolate, and he replied, "German Sweet Chocolate," when Guittard said: "We will reverse it, and call ours Sweet German Chocolate." This witness further testified: "I had many conversations with Guittard about Baker's chocolate before the one I have mentioned.   The object of those consultations was to get at Baker's customers, whom I knew, being connected with the house that was their New York agent.   That was the beginning of the consultations about Baker.   He asked me who were the largest customers we had for Baker's goods in consultations we had, and I gave him the name of the large firms in Philadelphia, New York, Chicago, etc., to whom he sold his Sweet German Chocolate."

Upon this state of facts,—which as the case is presented we must accept as true,—we are of opinion that it is not necessary to decide whether the plaintiff's label with the accompanying words and devices constituted a trademark, and as such the exclusive property of the plaintiff, for the reason that it is a fraud on a person who has established a business for his goods and carries it on under a given name or with a particular mark, for some other person to assume the same name or mark, or the

same with a slight alteration, in such a way as to induce persons to deal with him in the belief that they are dealing with the person who has given a representation to the name or mark. (*Lee* v. *Haley*, L. R. 5 Ch. App. Cas. 155.) Equity gives relief, said the Supreme Court of the United States in *McLean* v. *Fleming*, 96 U. S. 251, "upon the ground that one man is not allowed to offer his goods for sale representing them to be the manufacture of another trader in the same commodity. Suppose the latter has obtained celebrity in his manufacture, he is entitled to all the advantages of that celebrity, whether resulting from the greater demand for his goods or from the higher price the public are willing to give for the article, rather than for the goods of the other manufacturer, whose reputation is not so high as a manufacturer. Where, therefore, a party has been in the habit of stamping his goods with a particular mark or brand, so that the purchasers of his goods having that mark or brand know them to be of his manufacture, no other manufacturer has a right to adopt the same stamp; because, by doing so, he would be substantially representing the goods to be the manufacture of the person who first adopted the stamp, and so would, or might be, depriving him of the profit he might make by the sale of the goods which the purchaser intended to buy."

That the unlawful purpose was deliberately designed and effectuated clearly appears from the testimony given at the trial. The motion for nonsuit should therefore have been denied.

Judgment and order reversed, and cause remanded for a new trial.

MYRICK, J., MORRISON, C. J., and McKEE, J., concurred.

Rehearing denied.