[No. 15132. In Bank.—December 30, 1893.]

CHARLES H. SCHMIDT ET AL., RESPONDENTS, *v.* J. BRIEG ET AL., APPELLANTS.

TRADEMARKS—WORDS OF DESCRIPTION.—Words which are merely descriptive of the character, quality, or composition of an article cannot be monopolized as a trademark.

ID.—"SARSAPARILLA AND IRON."—The words "Sarsaparilla and Iron" are generic terms, used for the purpose of indicating not so much the origin, manufacture, or ownership of the beverage, as the quality of the article itself, and are not the proper subjects of exclusive use as a trademark.

ID.—FRAUDULENT IMITATION OF LABELS—INJUNCTION.—Independent of the validity of trademarks, a competing business firm is bound to deal fairly in placing its rival article upon the market; and, if it clearly appears that the defendant has closely imitated the plaintiff's label and style, and has done obvious damage to his business through unlawful business methods employed, the plaintiff is entitled to relief upon the ground of fraud, and may enjoin such imitation.

Id.—Duty of Trader.—No trader can adopt a trademark so resembling that of another trader, as that ordinary purchasers buying with ordinary caution are likely to be misled.

Id.—Laches of Plaintiff—Objection Upon Appeal for First Time.— The question of the laches of the plaintiff, because of delay in commencing the action, should be raised in the court below, and ought not to be presented upon an appeal for the first time.

Id.—Doctrine of Trusts Inapplicable.—The doctrine of laches as applied to claimants in the matters of trusts, does not apply with full force to cases of infringement of trademarks or labels; and where the action was commenced about two years after plaintiff discovered the infringement, and the record shows that the plaintiff had, prior to the bringing of this action, brought suit against other infringers, and that the defendants had notice of the prior litigation, and had changed the color of their label on account of a decision in the court below, the plea of laches is not supported by the facts.

Id.—Erroneous Injunction—Manufacture and Sale of "Sarsaparilla and Iron."—Where there is nothing in the complaint upon which a judgment awarding to plaintiff the exclusive right to manufacture the beverage of "Sarsaparilla and Iron" as against the defendants can be predicated, the plaintiffs are not entitled to a decree restraining the defendant from preparing, putting up, offering for sale, or selling the beverage in question, or from selling it under the name of "Sarsaparilla and Iron," and such injunction is erroneous.

Appeal from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a motion for a new trial.

The facts are stated in the opinion of the court.

*James G. Maguire*, *E. S. Salomon*, and *Henry Eickhoff*, for Appellants.

No one can acquire an exclusive right to words in common use by adopting them as a trademark unless they are used arbitrarily as a fancy name neither intended to designate qualities or ingredients of the commodity, not to mislead the public as to the true qualities or ingredients of the commodity.   (Brown on Trademarks, sec. 161; Civ. Code, sec. 991; *Corbin* v. *Gould*, 133 U. S. 308; *Manufacturing Co.* v. *Trainer*, 101 U. S. 51-54; *Canal Co.* v. *Clark*, 13 Wall. 311; *Eggers* v. *Hink*, 63 Cal. 445; 49 Am. Rep. 96; *Burke* v. *Cassin*, 45 Cal. 467; 13 Am. Rep. 204; *Wolfe* v. *Goulard*, 18 How. Pr. 64; *Burnett* v. *Phalon*, 9 Bosw. 192; *Amoskeag Mfg. Co.*

v. *Spear*, 2 Sandf. 599; *Colonial Life Assur. Co.* v. *Home and Colonial Assur. Co.*, 33 Beav. 548; *Corwin* v. *Daly*, 7 Bosw. 222.) If the words "sarsaparilla and iron," as alleged to have been used by plaintiffs, designated the ingredients of the beverage alleged to have been manufactured by plaintiffs, then the right to use them as a trademark or trade-name could not be appropriated by any one manufacturer of that beverage, to the exclusion of others, because words which are merely descriptive of an article, constituting its ordinary and known name, or indicating its ingredients, mode of composition, characteristic properties, quality, nature, size, number, or the like, cannot be appropriated as a trademark. Every maker of the article has a right to call it by its name and to describe it. (Sebastian's Law of Trademarks, 31–36; *Brown Chemical Co.* v. *Meyer*, 139 U. S. 540, 548; *Goodyear's Rubber Glove Co.* v. *Goodyear Rubber Co.*, 128 U. S. 598; *Amoskeag Mfg. Co.* v. *Trainer*, 101 U. S. 51; *Falkinburg* v. *Lucy*, 35 Cal. 53; 95 Am. Dec. 76; *Stokes* v. *Landgraff*, 17 Barb. 608; *Amoskeag Mfg. Co.* v. *Spear*, 2 Sandf. 599; *Fetridge* v. *Wells*, 4 Abb. Pr. 144; *Phalon* v. *Wright*, 5 Phil. 464; *Marshall* v. *Pinkham*, 52 Wis. 572; 38 Am. Rep. 756; *Larrabee* v. *Lewis*, 25 Alb. L. J. 203; *Ginter* v. *Kinney Tobacco Co.*, 12 Fed. Rep. 782; *Avery* v. *Meikle*, 81 Ky. 73; *Cheavin* v. *Walker*, L. R. 5 Ch. Div. 850; *Humphrey's Specific etc. Co.* v. *Wenz*, 14 Fed. Rep. 250; *Caswell* v. *Davis*, 58 N. Y. 223; 17 Am. Rep. 233; *Van Veil* v. *Prescott*, 14 Jones & S. 542; *Hostetter* v. *Adams*, 10 Fed. Rep. 838; *Bullock* v. *Gray*, 19 Journal of Jurisprudence, 218; *Taylor* v. *Gillies*, 59 N. Y. 331; 17 Am. Rep. 333; *Batty* v. *Hill*, 1 Hem. & M. 264; *Choynski* v. *Cohen*, 39 Cal. 501; 2 Am. Rep. 476; *Cohen* v. *Kahn*, 6 Crim. Law Bull. 154; 26 Alb. L. J. 342; *Gray* v. *Koch*, 2 Mich. N. P. 119.) This rule applies to trade-names as well as trademarks. (*Canal Co.* v. *Clark*, 13 Wall. 311.) The evidence is insufficient to sustain the decision as the alleged imitation of plaintiffs' label was not such as to deceive or mislead any person in purchasing the beverage in question.

(*Gorham Co.* v. *White*, 14 Wall. 511; *Walton* v. *Crowley*, 2 Blatchf. 440.)

*John L. Boone*, and *Langhorne & Miller*, for Respondents.

The plaintiffs adopted the words "Sarsaparilla and Iron" as a compound name or phrase, to indicate and designate a new product, and as the words are not descriptive of its main ingredients, the words should be protected as a trademark. (*Caswell* v. *Davis*, 35 How. Pr. 75; *Corwin* v. *Daly*, 7 Bosw. 222; *Burton* v. *Stratton*, 12 Fed. Rep. 696; Brown on Trademarks, sec. 135.) But whether the words constitute a technical trademark or not, they constitute a trade-name which is entitled to protection. (*McLean* v. *Fleming*, 96 U. S. 245; Brown on Trademarks, c. 12, secs. 521 et seq.; *Pierce* v. *Guittard*, 68 Cal. 68; 58 Am. Rep. 1; 4 Howard's Law Review, 321, and cases cited; *Burton* v. *Stratton*, 12 Fed. Rep. 696; *McCann* v. *Anthony*, Price & Steuart, 1054; *Levy* v. *Walker*, L. R. 10 Ch. Div. 447; *William Rogers Mfg. Co.* v. *Rogers etc. Mfg. Co.*, 11 Fed. Rep. 495; *Celluloid Mfg. Co.* v. *Cellonite Mfg. Co.*, 32 Fed Rep. 94; *Moxie Nerve Food Co.* v. *Baumbach*, 32 Fed. Rep. 205; *Societe Anonyme etc.* v. *Western Distilling Co.*, 43 Fed. Rep. 416.) The defendant's label is similar to that of plaintiff's, excepting that one is red and the other blue; but mere change of color does not relieve the infringement. (Brown on Trademarks, sec. 263; Sebastian's Law of Trademarks, 79, 307; *McLean* v. *Fleming*, 96 U. S. 245; *Gunness* v. *Ulmer*, 10 L. T. 127.)

PATERSON, J.—This is an action for an injunction, and to recover damages for an infringement of plaintiffs' trademark and labels.

The facts found by the court below are substantially as follows: In the year 1887, plaintiffs commenced to manufacture and sell a new and valuable medicinal compound or beverage, and adopted and used in connection with the sale thereof the name "Sarsaparilla

and Iron." By reason of the superior character of the medicinal constituents employed in the manufacture of the beverage or compound it became widely known and highly esteemed by the trade, and identified and distinguished by dealers and consumers under the designation of "Sarsaparilla and Iron." This name was not at that time in use, or known as a designation of any similar article of manufacture on sale. For the purpose of identifying the beverage as being of their manufacture, and to distinguish it from other articles of a similar nature, plaintiffs have affixed to the bottles containing the same their own labels, devices and trademark, specimens of which are attached to the complaint herein. The article has become widely known to the public and to buyers and consumers thereof as the beverage manufactured and sold by the plaintiffs not only through the name "Sarsaparilla and Iron," but through said labels, and up to the time of the infringement, hereinafter referred to, large sales and great profits had been made by the plaintiffs. The defendants, since the month of December, 1888, willfully disregarding the rights of the plaintiffs, and with the intention to divert to themselves the business of the plaintiffs and the profits and gains thereof, have fraudulently prepared, sold, and now continue to manufacture and sell throughout the state of California, an article or beverage in imitation of the plaintiffs' beverage, having the same taste, flavor and appearance as plaintiffs' article, with the intent to deceive and defraud the public and to injure and defraud the plaintiffs. They have put their beverage in bottles and packages similar to those used by the plaintiffs, and have labeled their bottles with labels, names, marks and devices similar to those used by the plaintiffs. Copies of these labels are attached to the complaint. These marks and devices so closely resembled those used by the plaintiffs as to be calculated and liable to deceive purchasers and consumers of plaintiffs' article, and to lead them, although exercising ordinary care and prudence, to believe that the article contained therein

is the plaintiffs' article, greatly to the diminution and
damage of the business and profits of plaintiffs derived
therefrom.   The defendants' beverage in imitation of
the plaintiffs' compound or beverage is inferior to that
put up by the plaintiffs, and by reason thereof the repu-
tation of plaintiffs' article has been greatly injured,
but there is no deleterious or poisonous substance in
the defendants' beverage.   By reason of the wrongful
acts of the defendants the plaintiffs have sustained
damage in the amount of three thousand five hundred
and thirty-nine dollars and twenty-five cents.   Upon
these findings the court concluded that the plaintiff was
entitled to an injunction perpetually restraining the de-
fendants from "preparing, putting up, selling, or offer-
ing for sale, said or any imitation of plaintiffs' article,
or any article under or bearing the name of "Sarsapa-
rilla and Iron," or any article under or bearing a color-
able or other imitation of said name, or any article
bearing said false labels, Exhibit B, or any imitation of
the said labels of plaintiffs, or any article bearing upon
or connecting therewith any of the said names, devices
or trademarks of the plaintiffs which are shown upon
said labels or exhibits.   Also that plaintiffs were entitled
to recover said sum of three thousand five hundred and
thirty-nine dollars and twenty-five cents and costs.   A
decree was entered accordingly.

1. Words which are merely descriptive of the char-
acter, quality or composition of an article cannot be mo-
nopolized as a trademark.   Thus it has been held that
the words "Iron Bitters" are so far indicative of the
qualities of an article as to fall within the scope of the
rule (*Brown Chemical Co.* v. *Meyer*, 139 U. S. 542), and
that name is no more generic than the name "Sarsapa-
rilla and Iron."   Our code provides that a trademark
shall not include any designation "which relates only
to the name, quality or description of the thing." (Civ.
Code, sec. 991.)   Words in common use are the common
property of the people, and no one can acquire an ex-
clusive right to such words by adopting them as his

trademark, unless they be used out of their ordinary acceptation, and as a fancy name. The general rule is opposed to the use of mere words as a trademark; but if all of the words be used under a new combination in the way of a fancy name or designation, they may constitute a valid trademark, if they do in fact indicate origin or ownership. (*Lawrence Mfg. Co.* v. *Tennessee Mfg. Co.*, 138 U. S. Rep. 546.) We think the words "Sarsaparilla and Iron" are generic terms, and were used for the purpose of indicating, not so much the origin, manufacture or ownership of the beverage, as the quality of the article itself. In *Canal Co.* v. *Clark*, 13 Wall. 327, the court said: "True, it may be that the use by a second producer, in describing truthfully his product by a name or combination of words already in use by another, may have the effect of causing the public to mistake as to the origin or ownership of the property, but if it is just as true in its application to his goods as it is to those of another who applied it, and who, therefore, claims an exclusive to use it, there is no legal or moral wrong done.' was held here that a person is not entitled to the exclusive use of the words "Antiquarian Book Store" as a trademark. (*Choynski* v. *Cohen*, 39 Cal. 501; 2 Am. Rep. 476; see also Brown on Trademarks, sec. 164; *Raggett* v. *Findlater*, L. R. 17 Eq. 29.) The words "Sarsaparilla and Iron" describe ingredients well known to the public. The word "sarsaparilla" means a root, or its extract, and iron, as used in connection with the word "sarsaparilla," must mean a solution of the metal iron.

But it is claimed by respondents that the words "sarsaparilla and iron" do not, in fact, indicate the character, kind, or quality of their beverage; that it is not a composition of sarsaparilla and iron, but a solution of various substances; that it contains only a small quantity of sarsaparilla and a small quantity of iron, and the name was given to the beverage only as a name by which it might be known, without in any way being descriptive; but it is sufficient to say in answer to this

claim that the name given to the article is either generic, or it is of such a character that it can as well be applied to defendants' beverage as to the plaintiff's; and, this being so, as was said in *Canal Co.* v. *Clark*, 13 Wall. 327, although the use of the name may have the effect of causing the public to mistake as to the origin or ownership of the product, "if it is just as true in its application to his goods as it is to those of another who first applied it . . . . there is no legal or moral wrong done," the words or combination being of such a character as to designate respectively *well-known articles of commerce*.

2. It will be observed from our statement of the facts that the court found the defendants willfully, with intention to divert to themselves the business of the plaintiffs and secure the profits and gains thereof, prepared and sold large quantities of an inferior imitation of the defendants' beverage, and in doing so had used labels, marks and devices so closely resembling those used by the plaintiff as to deceive the purchasers and lead them, although exercising ordinary care, to believe that they were purchasing plaintiffs' beverage. Upon this finding the plaintiffs were entitled to judgment independently of the validity of the trademarks in question. In *Lawrence Mfg. Co.* v. *Tennessee Mfg. Co.*, 138 U. S. 546, Mr. Chief Justice Fuller said: "Undoubtedly an inferior and fraudulent competition against the business of the plaintiff—conducted with the intent, on the part of the defendant, to avail itself of the reputation of the plaintiff to palm off its goods as plaintiff's—would, in a proper case, constitute ground for relief"; and in the course of his opinion referred to an English case in which Lord Justice Lindley remarked that "although the plaintiffs had no exclusive right to the use of the words 'Stone Ale' alone, as against the world, or any right to prevent the defendant selling his goods as having been made at Stone, 'yet, as against a particular defendant who is fraudulently using or going to fraudulently use the words with the express purpose of pass-

ing off his goods as the goods of the plaintiffs, it appears to me that the plaintiffs may have rights which they may not have against other traders.'" A competing business firm is bound to deal fairly in placing its rival article upon the market; and, if it clearly appears that the defendant has closely imitated the plaintiff's labels and style, and has done obvious damage to the latter's business through the unlawful business methods employed, the plaintiff is entitled to relief upon the ground of fraud. (*Sperry* v. *Percival Milling Co.*, 81 Cal. 258; *Pierce* v. *Guittard*, 68 Cal. 68; 58 Am. Rep. 1.) Cases are not wanting of injunctions issued to restrain the use even of one's own name, where such use is made with such additions as to intentionally deceive the public and make them believe he is selling the goods of another. (*McLean* v. *Fleming*, 96 U. S. 251; *Brown Chemical Co.* v. *Meyer*, 139 U. S. 542. See also *Moxie Nerve Food Co.* v. *Baumbach*, 32 Fed. Rep. 212; *California Fig Syrup Co.* v. *Improved Fig Syrup Co.*, 51 Fed. Rep. 297; *Improved Fig Syrup Co.* v. *California Fig Syrup Co.*, 54 Fed. Rep. 178; *Cleveland Stone Co.* v. *Wallace*, 52 Fed. Rep. 439.)

There is abundant evidence in the record to support the finding of the court. The defendants' label is a palpable imitation in form and design of the plaintiffs' label. Both have the same general appearance except in color, one being blue, the other red. Both have crescent-shaped neck labels for the bottle, lined and lettered in similar form. Both have the word "sarsaparilla" at the top of the label in large letters, and the word "iron" printed in the border of the lower half of the label. Both have parallel lines running across the middle of the label with the name of the manufacturers between the same.

The monogram of the defendants occupies the same position upon their label as the trademark of the plaintiffs upon the label of the latter. Both labels have the words "A great blood purifier" and "cures all skin diseases" printed in the lower half of the label. In

fact, the only material difference between the two labels in design and appearance exists in the colors, but this is no defense. (Brown on Trademarks, sec. 236.) The difference in color is a mere probative fact—a circumstance to be considered by the court in determining the ultimate question as to whether the defendants' devices so closely resembled the plaintiffs' labels as to deceive the public. The court below has found the fact that purchasers have been deceived by the acts of the defendant, and we cannot say that this finding is not supported by the evidence. As was said in *McLean* v. *Fleming*, 96 U. S. 251. " What degree of resemblance is necessary to constitute an infringement is incapable of exact definition as applicable to all cases. All that courts of justice can do in that regard is to say that no trader can adopt a trademark so resembling that of another trader, as that ordinary purchasers buying with ordinary caution are likely to be misled." See also *Improved Fig Syrup Co.* v. *California Fig Syrup Co.*, 54 Fed. Rep. 178. The testimony shows clearly that the size, form, design, ornamentation and phraseology of plaintiff's label were studiously followed by the defendants in the preparation of their own, and that the latter was used and intended to be used as a close imitation of the plaintiffs' label, and for the purpose of leading the public to believe that the beverage contained in the bottles upon which the defendants' labels were placed was the identical article manufactured by the plaintiffs.

3. The appellants insist that the plaintiffs should not be allowed to recover any damages, because of the delay in commencing this action. This claim is set up for the first time in this court, and appears to be an afterthought. There is nothing in the answer, or in the report of the proceedings at the trial below, indicating an intention to set up such a defense. The point ought to have been raised at least at the time the motion for a nonsuit was made, the facts having come out in the evidence of the plaintiffs; but conceding for the purposes of the discussion that, notwithstanding the failure

of the defendants to set up the plea of laches until this time, we think the contention is not supported by the admitted facts. The action was commenced about two years after the plaintiffs discovered the infringements, and the record shows that plaintiff had, prior to the bringing of this action, brought suit against other infringers, and that the defendants not only had notice of this prior litigation, but had changed the color of their label on account of a decision in the court below. The doctrine of laches, as applied to stale claims in matters of trust, does not apply with full force to cases of infringement. (Brown on Trademarks, sec. 685.)

It follows from the views we have expressed that the judgment of the court is erroneous in two particulars. The plaintiffs were not entitled to a decree restraining the defendants from preparing, putting up, offering for sale, or selling the beverage in question. There is nothing in the complaint upon which a judgment awarding to plaintiff the exclusive right to manufacture the beverage as against the defendants can be predicated. The decree is also erroneous in so far as it enjoins the defendants from making, offering for sale, or selling, any beverage or article under the name of "Sarsaparilla and Iron." As we have seen, the plaintiffs have not the exclusive right to the use of those words. In other respects the decree is correct.

The restraining portion of the decree should simply have enjoined the defendants from selling, or offering for sale, any beverage or article bearing the labels shown by Exhibit B attached to the complaint, and from selling or offering to sell any article or beverage under any marks, signs, devices or labels calculated or liable to deceive purchasers and consumers of plaintiffs' article, or the public generally, or to lead them, while exercising ordinary care and prudence in purchasing, to believe that the article contained in the defendants' bottles and packages is the plaintiffs' article.

The order denying the defendants' motion for a new trial is affirmed. The cause is remanded, with direc-

tions to the court below to modify the decree in accordance with the views herein expressed. As so modified the judgment will stand affirmed.

McFARLAND, J., GAROUTTE, J., HARRISON, J., and FITZGERALD, J. concurred.

Rehearing denied.

BEATTY, C. J., dissented from the order denying a rehearing.