[No. 18195. Department Two—March 28, 1894.]

J. J. SPIEKER, RESPONDENT, v. T. M. LASH ET AL., APPELLANTS.

TRADEMARK—PROPER SUBJECTS.—Words merely descriptive of the thing manufactured are not the proper subjects of a trademark, but the name of the maker, and every device in the form and contents of a label or wrapper affixed to denote that goods are manufactured, produced, compounded, or sold by him, other than a name, word, or expression denoting that the goods are of some particular class or description, are proper subjects of a trademark.

ID.—ASSIGNMENT OF TRADEMARK—PROTECTION OF ASSIGNEE—INJUNCTION. When the claimant has secured a trademark or name by filing with the secretary of state his claim to the same, and otherwise complying with section 3197 of the Political Code, he may transfer the same, and the right to the exclusive use thereof, to another, and the property right so transferred will be protected from infringement by injunction.

ID.—IMPROPER USE OF ONE'S OWN NAME.—The improper use of one's own name may be enjoined, where, for a valuable consideration, he has voluntarily sold a trademark of which his name forms an essential part, and the goodwill of a partnership business in which his own name is the leading and characteristic designation of the firm.

ID.—IMITATION OF LABELS—FRAUD.—Apart from the infringement of a valid trademark, a competing business firm is bound to deal fairly in placing its rival article upon the market, and if it clearly appears that the defendant has closely imitated the plaintiff's labels and style, and has done obvious damage to the latter's business through the unlawful business methods employed, the plaintiff is entitled to relief upon the ground of fraud.

ID.—INJUNCTION RESTRAINING USE OF NAME.—Injunctions may be issued to restrain the use of one's own name where such use is made with such

additions as to intentionally deceive the public, and make them believe he is selling the goods of another.

ID.—MANUFACTURE AND SALE OF MEDICINAL PREPARATION—TRADEMARK —GOODWILL—INJUNCTION.—A plaintiff who is not a patentee of a medicinal preparation sold by him, but is merely the assignee of a trademark of such preparation, and of the goodwill of the firm which originally manufactured it, cannot maintain an injunction against his assignor, to prevent the manufacture and sale of that or any similar preparation; but may enjoin the use of labels by his assignor infringing the trademark, or constituting a colorable imitation of his labels, the resemblance being such as to justify the conclusion that they were intended and adapted to mislead the public, and to injure the plaintiff's business, and may prevent the defendant from drawing off the plaintiff's patrons and customers.

APPEAL from a judgment of the Superior Court of Sacramento County, and from an order denying a new trial.

The facts are stated in the opinion.

*A. L. Hart,* and *C. H. Oatman,* for Appellants.

The name of "Lash's Kidney and Liver Bitters" is not indicative of origin or ownership, but it is descriptive of the composition and properties of the article, and cannot be claimed or protected as a trademark. (Civ. Code, sec. 991; *Burke* v. *Cassin,* 45 Cal. 478; 13 Am. Rep. 204; *Canal Co.* v. *Clark,* 13 Wall. 322; *Choynski* v. *Cohen,* 39 Cal. 501; 2 Am. Rep. 476; Browne on Trade Marks, sec. 134; *Falkinburg* v. *Lucy,* 35 Cal. 52; 95 Am. Dec. 76; 2 High on Injunctions, secs. 1063, 1074; 4 Lawson's Rights, Remedies, and Practice, sec. 1638, p. 2838; *Keaseby* v. *Brooklyn Chemical Works,* 16 N. Y. Supp. 318; *Koehler* v. *Sanders,* 122 N. Y. 65; *Gilman* v. *Hunnewell,* 122 Mass. 139; *Brown Chemical Works* v. *Meyer,* 139 U. S. 540; *Caswell* v. *Davis,* 58 N. Y. 234; 17 Am. Rep. 233.) Laudatory words and descriptive matter contained in trademark labels, relating to composition and properties, or directions for use, are not entitled to protection. (*Gilman* v. *Hunnewell,* 122 Mass. 139; *Falkinburg* v. *Lucy,* 35 Cal. 52; 95 Am. Dec. 76; *Brown Chemical Works* v. *Meyer,* 139 U. S. 540; *Caswell* v. *Davis,* 58 N. Y. 234; 17 Am. Rep. 233.) Lash cannot be enjoined

from carrying on business in his own name, or from announcing that any article is manufactured by him, if such be the truth. (*Russia Cement Co.* v. *Le Page,* 147 Mass. 206; 9 Am. St. Rep. 685. See, also, *Iowa Seed Co.* v. *Dorr,* 70 Iowa, 481; 59 Am. Rep. 446.) A trademark, as distinct property, separate from the article created by the original producer or manufacturer, is not the subject of sale or assignment. (*Kidd* v. *Johnson,* 100 U. S. 617; *Witthaus* v. *Braun,* 44 Md. 303; 22 Am. Rep. 44; *Leather Cloth Co.* v. *American Leather Cloth Co.,* 35 L. J. Ch. 53; *Carmichel* v. *Latimer,* 11 R. I. 395; 23 Am. Rep. 481.) As there was no express assignment of the goodwill of the business, the rule implied by section 1776 of the Civil Code, that one who sells the goodwill of a business will not endeavor to draw off the customers, does not apply, and the rights of the parties remain the same as at common law, under which the seller of the goodwill has still a right to engage in a similar business and solicit the customers of the old concern, unless he has expressly covenanted not to do so. (Bates on Partnership, secs. 664, 666; *Marcus Ward & Co.* v. *Ward,* 15 N. Y. Supp. 913; *Williams* v. *Farrand,* 88 Mich. 473; 8 Am. & Eng. Ency. of Law, 1369; 2 High on Injunctions, 3d ed., sec. 1169, and notes.)

*Johnson, Johnson & Johnson,* for Respondent.

The name "Lash's," and its appropriation by plaintiff and defendant when partners, conforms to every requirement as to a trademark. (Civ. Code, sec. 991; Pol. Code, sec. 3196; *Burke* v. *Cassin,* 45 Cal. 468; 13 Am. Rep. 204; *Amoskeag Mfg. Co.* v. *Trainer,* 101 U. S. 51; *McLean* v. *Fleming,* 96 U. S. 254; *Croft* v. *Day,* 7 Beav. 84; *Gilman* v. *Hunnewell,* 122 Mass. 139; *Ainsworth* v. *Walmesley,* 44 L. J. 252; *Howe* v. *Howe Machine Co.,* R. Cox's American Trade Mark Cases, sec. 421. See, also, Browne on Trade Marks, sec. 418; *James* v. *James,* L. R. 13 Eq. 421; *Thorley's Cattle Food Co.* v. *Massam,* 42 L. T., N. S., 851.) Whatever may be the rule, as to plaintiff and outsiders, it is clear that, as between him and Lash, the

latter parted altogether with his right to "Lash's Bitters."
That a man may, under certain circumstances, part with
the right to use his own name is too well settled now to
admit of doubt.   (See *Skinner* v. *Oakes,* 10 Mo. App. 45;
*Derringer* v. *Plate,* 29 Cal. 292; 87 Am. Dec. 170; *Gillis* v.
*Hall,* R. Cox's American Trade Mark Cases, 596; *Brown
Chemical Co.* v. *Meyer,* 139 U. S. 540; *Taendstickfabriks
Aktiebolaget Vulcan* v. *Myers,* 58 Hun, 161; *Liggett & M.
Tobacco Co.* v. *Sam Reid T. Co.,* 104 Mo. 53; 24 Am. St.
Rep. 313; *Lawrence Mfg. Co.* v. *Tenn. Mfg. Co.,* 138 U. S.
537.)   The goodwill undoubtedly passed to plaintiff.
(*Shipwright* v. *Clements,* 19 Week. Rep. 599; *Wilmer* v.
*Thomas,* 74 Md. 485.   Also, *Brown Chemical Co.* v. *Meyer,*
139 U. S. 540; *Sheppard* v. *Boggs,* 9 Neb. 257.   See 1
Lindley on Partnership, 550.)   Having sold the good-
will he should be enjoined from attempting to draw
away any of the customers.   (Civ. Code, sec. 1776.)

VANCLIEF, C.—Suit in equity to enjoin the infringe-
ment of a trademark and the diversion of the trade or
custom of the plaintiff to whom had been transferred the
goodwill of the business in which the trademark had
been acquired and used.

The complaint contains two counts, the first alleging
an infringement of plaintiff's trademark and proprie-
tary name, "Lash's Kidney and Liver Bitters"; and the
second, a cause of action for breach of warranty implied
in a sale of the goodwill of the business, which included
the manufacture and sale of said bitters.

In the year 1884 the plaintiff and defendant formed
a partnership at Sacramento under the firm name of
T. M. Lash & Co., in the purchase and sale of drugs and
medicines, and the manufacture and sale of medicinal
preparations.

In 1886 they made up a formula for a medicinal
preparation of bitters principally intended to benefit
the kidneys and liver, and gave it the name "Lash's
Kidney and Liver Bitters"; and thereafter the partner-
ship of T. M. Lash & Co. built up a large and profitable

business in the manufacture and sale of that preparation. The preparation was not patented, but the firm registered a trademark thereof in the office of the secretary of state. In carrying on the business of the firm, Spieker remained at the store and attended to the business of manufacturing and filling orders for the bitters, while Lash traveled over the country advertising the bitters and securing orders therefor.

On November 9, 1889, the firm of T. M. Lash & Co. was dissolved by consent of the partners, and all the interest of Lash in the property of the firm was transferred by him to Spieker. It is alleged in the complaint, and admitted by the answer, and found as a fact by the court, that this transfer included the goodwill of the business. On October 31, 1889, T. M. Lash and his wife, Jennie Lash, transferred to Spieker the trademark of "Lash's Kidney and Liver Bitters," together with the right to use the same, and covenanted to warrant and defend the same.

In July, 1890, T. M. Lash commenced, at Sacramento, to manufacture a preparation similar to "Lash's Kidney and Liver Bitters," which he called "Dr. Web's Liver and Kidney Bitters," and soon afterwards formed a partnership with his wife under the name "T. M. Lash & Co." for the purpose of manufacturing and selling the same. On the back label of this preparation he thereafter described himself as "T. M. Lash, manufacturer of Dr. Web's, the only genuine, Liver and Kidney Bitters," and notified the public to address all orders, "T. M. Lash & Co., Proprietors, 923 K street, Sacramento, Cal."

The court found, substantially, that the defendant began the manufacture and sale of the Web's bitters with intent to injure the plaintiff's business, and to detract from the reputation of Lash's Kidney and Liver Bitters; that the preparations are very similar and composed mainly of the same ingredients, and that Web's bitters, sold in the name of T. M. Lash & Co., were put up in bottles closely resembling the bottles in which

plaintiff was accustomed to put up "Lash's Kidney and Liver Bitters," and that defendant placed upon the bottles containing Web's bitters labels which, in size and general appearance, very nearly resemble the labels placed by plaintiff on the bottles containing said Lash's Bitters; that by these acts the defendants intentionally deceived the general public into the belief that the manufacture of the original Lash's Kidney and Liver Bitters had been superseded by the same preparation under the name of " Web's, the only genuine, Liver and Kidney Bitters," manufactured by " T. M. Lash" and sold by " T. M. Lash & Co."; that defendants, with intent to injure the goodwill of plaintiff's business and to prevent the sale of " Lash's Kidney and Liver Bitters," as manufactured and sold by plaintiff, and to induce the customers of plaintiff and of the former firm of T. M. Lash & Co. to patronize them under the same firm name, formed a pretended partnership under that name, and sought to supplant the Lash bitters manufactured by plaintiff with the Web's bitters manufactured by T. M. Lash, and sold in the firm name of T. M. Lash & Co. to the patrons and customers of plaintiff, and sought to exchange Web's bitters for Lash's bitters, and to induce the public to believe that the Web's bitters was the only genuine kidney and liver bitters, and have thereby intentionally drawn off from plaintiff to themselves a large number of plaintiff's patrons and customers.

The judgment of the court was in favor of plaintiff, enjoining the defendants as prayed for in the complaint; and defendants have appealed from the judgment, and from an order denying their motion for a new trial.

While it is true that the words, " kidney and liver bitters," are merely descriptive of the thing manufactured, and therefore not the proper subject of a trademark, yet the name of the maker, and every device in the form and contents of a label or wrapper affixed to denote that goods are manufactured, produced, compounded or sold by him, other than a name, word, or

expression denoting that the goods are of some particular class or description, are proper subjects of a trademark; and any person may secure the exclusive right to the use of such trademark or *name*, by filing with the secretary of state his claim to the same, and otherwise complying with section 3197 of the Political Code; and when the claimant has thus secured a trademark, or name, he may transfer the same and the right to the exclusive use thereof to another, and the property right so transferred will be protected from infringement by injunction.   (Pol. Code, sec. 3199.)

The label filed with the secretary of state by the original firm of T. M. Lash & Co. clearly indicated that that firm was the proprietor, manufacturer, and seller of a medicinal preparation named "Lash's Kidney and Liver Bitters," which was described as compounded from the bark *Rhamus parshiana*, for use as a mild cathartic and regulator of the stomach, bowels, and liver, and as "helpful in all affections of kidneys and liver," and as sold by them for the price of one dollar per bottle, and stated that "none is genuine without the *fac simile* signature, T. M. Lash & Co."   Both the front and back labels, while containing words which could not have been exclusively appropriated as a trademark, yet contained characteristics and devices indicative of original manufacture, compounding, and sale of the preparation by T. M. Lash & Co.   The exclusive use of these labels, in so far as thus indicative, became the property of the original firm of T. M. Lash & Co., subject to transfer as personal property by the express terms of the statute; and the defendants, T. M. Lash and wife, expressly transferred all their rights in that trademark to the plaintiff, and therefore may properly be enjoined from the use of any label which indicates that medicine of the same nature is prepared and compounded, or sold, by "T. M. Lash and Company," or that "Lash" is the original author or compounder of it.   (*Schmidt* v. *Brieg*, 100 Cal. 672.)   And apart from the infringement of a valid trademark, as said by this court in *Schmidt* v. *Brieg:*

"A competing business firm is bound to deal fairly in placing its rival article upon the market; and if it clearly appears that the defendant has closely imitated the plaintiff's labels and style, and has done obvious damage to the latter's business through the unlawful business methods employed, the plaintiff is entitled to relief upon the ground of fraud. (*Sperry* v. *Percival Milling Co.*, 81 Cal. 258; *Pierce* v. *Guittard*, 68 Cal. 68; 58 Am. Rep. 1.) Cases are not wanting of injunctions issued to restrain the use even of one's own name, where such use is made with such additions as to intentionally deceive the public and make them believe he is selling the goods of another. (*McLean* v. *Fleming*, 96 U. S. 251; *Brown Chemical Co.* v. *Meyer*, 139 U. S. 542. See, also, *Moxie Nerve Food Co.* v. *Baumbach*, 32 Fed. Rep. 212; *California Fig Syrup Co.* v. *Improved Fig Syrup Co.*, 51 Fed. Rep. 297; *Improved Fig Syrup Co.* v. *California Fig Syrup Co.*, 54 Fed. Rep. 178; *Cleveland Stone Co.* v. *Wallace*, 51 Fed. Rep. 438.)" It would seem, *a fortiori*, that the improper use of one's own name may be enjoined where, for a valuable consideration, he has voluntarily sold a trademark of which his name forms an essential part, and the goodwill of a partnership business wherein his own name was the leading and characteristic designation of the firm, as in this case.

The evidence shows that the defendants' labels, while differing in some respects from those of the plaintiff, are a colorable imitation of them, the resemblance being such as to justify the conclusion that they were intended and adapted to lead the public generally to the belief that the manufacture of the original "Lash's Kidney and Liver Bitters" had been superseded by the same preparation under the name of "Web's, the only genuine, Liver and Kidney Bitters," manufactured by "M. Lash," and sold by "T. M. Lash & Co." The evidence fully sustains the finding, to the effect that defendants intended and endeavored to injure the plaintiff's business, and had effected that purpose by drawing off from plaintiff to themselves a large number of plaintiff's patrons

and customers, and the facts found warrant equitable relief.

But the injunction as granted is too broad. The plaintiff is not a patentee of the preparation manufactured and sold by him; and defendants cannot be enjoined from the manufacture and sale of that or any similar preparation.

I think the order denying a new trial should be affirmed; but that the perpetual injunction granted by the judgment should be modified by striking out the words, "and from manufacturing and selling the said Dr. Web's, the only genuine, Liver and Kidney Bitters," and inserting in lieu thereof the following: "And from using the name, T. M. Lash, or T. M. Lash & Co., to designate the business of manufacturing or selling any liver and kidney, or kidney and liver bitters, and from any infringement of the trademark of Lash's Kidney and Liver Bitters, and from any imitation of the form or appearance of the labels used by the plaintiff upon bottles in which he stores or sells Lash's Kidney and Liver Bitters." And that in all other respects the judgment should be affirmed. Costs of appeal to be taxed to respondent.

Searls, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the order denying a new trial is affirmed; the judgment is modified as indicated in the opinion, and as so modified is affirmed. Costs of appeal taxed to respondent.

De Haven, J., Fitzgerald, J., McFarland, J.

Hearing in Bank denied.