### H. Z. DUKE v. E. P. CLEAVER & Co.

Delivered June 25, 1898.

**Trade Name—Proprietary Right—Injunction.**

The name "Nickle Store," when used as a business sign and trade name in connection with the business of a general merchant who does not buy or sell nickel, and whose goods as a rule are not sold for a nickel, is not a term merely descriptive of his wares and business, but is a trade name which he may acquire an exclusive right to use at a given place, and the use of which by another at that place a court of equity will restrain by injunction.

APPEAL from Montague. Tried below before Hon. D. E. BARRETT.

*J. L. Rudy, D. M. Smith,* and *Levi Walker,* for appellant.

*Speer & Speer,* for appellees.

HUNTER, ASSOCIATE JUSTICE.—The appellant was plaintiff below, and on August 10, 1897, filed his petition against the appellee in the District Court of Montague County, the charging part and prayer of which are as follows:

"That heretofore, to wit, on the 15th day of October, A. D. 1894, plaintiff opened a general variety and notion store in Bowie, Texas, for the purpose of dealing in, handling, and selling for profit, all manner and kinds of articles, merchandise, and notions usually kept in such stores, consisting of chinaware, queensware, glassware, tinware, stoneware, hardware, graniteware, hosiery, towels, jewelry, stationery, toilet articles, notions, 5 cents, 10 cents, and 15 cents counters, etc., etc. That at the opening of said business plaintiff adopted as his business sign and trade name the words 'Nickle Store,' which said sign was painted and placed above and in front of plaintiff's place of business by the direction of plaintiff, who has ever since continued to use and still continues to use said business sign and trade name without any change or abandonment whatever. That from the date of the opening of his said business up to the present time, plaintiff has continuously and industriously advertised to the world at large his business and place of business under the sign and trade name the 'Nickle Store,' as aforesaid. That plaintiff has spent large sums of money in advertising his said business in the newspapers of Montague and adjoining counties, and that in addition to the newspaper advertising aforesaid, plaintiff has expended and is still expending large sums of money in procuring metallic road signs bearing the words 'The Nickle Store,' and in having the same posted up along all the roads, avenues, and highways leading into the city of Bowie, Texas, wherein is located plaintiff's Nickle Store as aforesaid. That further, plaintiff's letterheads, billheads, envelopes, wrapping paper, etc., all have printed on them the words 'The Nickle Store,' plaintiff's business sign and trade name as aforesaid. That by means of the great amount and diverse character of his advertising, plaintiff's place of business has become known far and wide as the 'Nickle Store of Bowie, Texas,' and that by his fair, upright, honest, and impartial business methods, plaintiff has built up for himself an enviable reputation for integrity and business honor, and for his business a large and profitable patronage, composed of many customers from Montague and adjoining counties. That on the 26th day of July, A. D. 1897, defendant, who had a short time previously esablished himself in the grocery business in a building adjoining that in which plaintiff was and is conducting his 'Nickle Store,' did unjustly, unlawfully, wrongfully, and maliciously, and without the fear of God before his eyes or the love of his neighbor in his heart, erect and cause to be erected, over and above the front door of his said place of business, a large painted sign bearing the words 'Nickle Store,' which said sign is an

almost identical representation of the business sign and trade name of plaintiff as aforesaid. That defendant well knew, at the time he erected and caused to be erected said sign as aforesaid, that the words 'Nickle Store' was and is the business sign and trade name of plaintiff, and had been so used by him for years, and defendant further well knew that such an unauthorized and unwarranted course of conduct on his part was an unjust appropriation of plaintiff's property and an unlawful infringement of plaintiff's rights. That said false and fraudulent sign so erected by defendant over and above his said place of business is fitted and intended to mislead and has deceived and misled sundry persons and customers of this plaintiff, by creating upon their minds the false and fraudulent impression that the sign which they saw was plaintiff's sign, and that the business conducted within was in consequence plaintiff's business, and that defendant was enabled the more easily and successfully to accomplish his false and fraudulent purpose of diverting plaintiff's trade to his own business place by having just a short time previous to the erection of the said fraudulent sign procured a quantity of goods similar in character and appearance to the stock of goods kept and handled by plaintiff, which said goods so procured defendant did arrange and display within and about the entrance to his store in such manner as to make the front of his store resemble as closely as possible that of plaintiff, while at the same time defendant further deceived and misled the people and all passers-by by falsely and fraudulently pretending and representing to them that his establishment was and is the 'Nickle Store.' Plaintiff further avers that a large part of his mail comes to him addressed to the 'Nickle Store,' and that defendant's unlawful and fraudulent appropriation of plaintiff's trade name will confuse and scatter his (plaintiff's) correspondence, cripple his business, and thus deprive him of a large portion of his legitimate sales and consequent profits. Plaintiff says further that defendant's unlawful and unjust appropriation of his trade name as aforesaid has caused him actual damage in the sum of five dollars, and that each day defendant is permitted to maintain his said fraudulent sign plaintiff's damage is rapidly and largely increased, and that by reason of defendant's wrongful and malicious use and appropriation of plaintiff's trade name, plaintiff has sustained large damage in body, mind, and business, for all of which defendant should be made to respond in exemplary damages. Wherefore, plaintiff prays for a temporary writ of injunction, restraining defendant from further using, maintaining, or displaying said sign or any part thereof, or in any manner using, appropriating, or infringing plaintiff's trade name or business sign. That defendant be cited to answer this petition, and that on final trial plaintiff have judgment perpetuating said injunction, for all costs of suit, and for general relief."

The defendant filed the following demurrers:

"1. This defendant demurs generally to plaintiff's petition, and says the same shows no cause of action in plaintiff entitling him to the relief sought, of which this defendant prays judgment of the court.

"2. For special exceptions to plaintiff's petition, defendant says the same is insufficient to entitle plaintiff to a writ of injunction, for the following reasons: (1) Said petition is without equity, and does not state facts which would entitle plaintiff to a writ of injunction. (2) Said petition does not show that plaintiff is the originator or the first person to use the words 'Nickle Store' in connection with such business as that carried on by plaintiff. (3) It does not appear from said petition that plaintiff had so appropriated the words 'Nickle Store' as to acquire an exclusive or any property right therein whatever. (4) It does not appear from plaintiff's petition that the said words 'Nickle Store' are such words or sign or symbol as are capable of being appropriated, or in which plaintiff might acquire any exclusive rights whatever. (5) Said petition shows upon its face that the words 'Nickle Store,' as used by plaintiff and defendant, are words descriptive of the character of the business carried on with each establishment, and as such are not such words as may be exclusively appropriated by plaintiff or anyone else. (6) Said petition does not show upon its face that defendant in placing said words as a sign over and above his door of his business house did so with any intent to defraud either the plaintiff or anyone else, nor does it allege facts sufficient to show that defendant acted with any fraudulent design whatever. Wherefore, defendant says said petition is without equity, and prays that the said temporary injunction heretofore granted be dissolved."

The court sustained these demurrers, and, plaintiff declining to amend, his petition was dismissed, and from that judgment he appeals.

We think the petition stated a good cause of action for damages and equitable grounds for injunction. All the authorities, it seems, agree that where the trade name or sign is unique, or not descriptive of the business carried on, its use by others will be enjoined upon the ground that the originator has a property right in the word or sign.

But it is contended that the word "nickle" as used here is merely descriptive, conveying the idea that it is a cheap store, because the word is used by us to signify one of our small coins, the five cent piece, which is made of a nickel metal; but such is not the meaning of the word as it is spelled in the sign. The word representing our five-cent coin is spelled "nickel," while the one in the sign is spelled "nickle." The orthography is quite similar, it is true, but the meanings of the two words have not the slightest similarity. "Nickle" is defined as follows: "The European green woodpecker, or yaffle;—called also *nicker pecker*." See Webster's Int. Dict., 1891. It is not contended that appellant dealt in woodpeckers of any color, or yaffles or nicker peckers, and hence the name is not descriptive of his merchandise. Nor is it insisted that it is descriptive of his manner of doing business, unless perhaps it was intended to suggest that "the early bird gets the worm."

The name represents, in this part of the country at least, a rare species of the bird kingdom—rara avis—and suggests that the person adopting it as a trade name and door sign was thoroughly familiar with natural

history, and being so was enabled to select a word which he knew represented this beauteous green bird of the European forests, to "perch above his chamber door," while the citizens of Montague and adjoining counties, who were not deeply versed in orthography and natural history, supposed that it meant that a customer could there buy for a nickel all that he could carry. Mr. Cleaver, seeing the continuous stream of customers which was attracted to appellant by this magic trade name and door sign, began to consider how he might disturb that stream and divert a portion of its current into his estuary, and thereupon set up a similar sign over his place of business, and thus said unto the natives: "Lo! here is 'the nickle store' you have seen advertised. Come hither and trade."

We are of opinion that, according to the definition given by Mr. Webster, the name and sign were unique, and the appellant had obtained a property right therein at Bowie, Texas, and that appellee had no right to use the same or any similar word on his door sign or otherwise, in a manner calculated to injure the appellant by causing his customers to deal with appellee believing they were dealing with appellant.

· The case has been briefed and argued here as if the word had been intended to represent our nickel or five-cent coin, but was misspelled, and appellee, considering it in this light, insists that it is descriptive of the character of business carried on by appellant, that is, that it means the same as *cheap* store, and conveys that idea and no other, and that appellant had no right to appropriate a word exclusively which thus describes how he is selling his goods and what kind of goods he is selling. But while the words "Nickel Store" might suggest to many the idea that goods are sold there at low prices, or that cheap goods are sold there, yet, in the opinion of the writer, such is not at all the necessary or natural meaning of it, any more than such meaning should be attributed to the use of the words "Silver Store," because five-cent coins are made also of silver, or to the words "Copper Store," because one-cent coins are made of copper. It is, in his opinion, an arbitrary use of the word—even if spelled "nickel"—in this case, where nickel metal is not sold or bought, and where the goods kept are not, as a general thing, offered and sold for a nickel. It is neither descriptive of appellant's wares nor of the prices at which he sells them, and he therefore had a right to adopt the word "nickel," if he chose, for the name of his store and place of business, and as a trade name for his business in Bowie; and having used it for years, as alleged, and built up a reputation and valuable patronage thereunder, no man engaging in a similar business in the same town had the right to use the name for the purpose of injuring him, and a court of equity will in such cases interpose by injunction to prevent the wrong. Weinstock, Lubin & Co. v. Marks, 42 Pac. Rep., ·142; Pierce v. Guittard, 68 Cal., 71, 8 Pac. Rep., 645; Schmidt v. Brieg, 100 Cal., 672, 35 Pac. Rep., 623.

In Levy v. Walker, Cox's Manual of Trade Mark Cases, the court is quoted as saying: "You must not use a name, whether fictitious or real,

or a description, whether true or not, which is intended to represent or is calculated to represent to the world that your business is my business, and therefore deprive me by a fraudulent misstatement of yours of the profits of the business which would otherwise come to me. That is the sole principle on which the court interferes. The court interferes solely for the purpose of protecting the owner of a trade or business from a fraudulent invasion of that business by somebody else. It does not interfere to prevent the world outside from being misled into anything."

We think that court put its decision on the right ground, and we approve the principles there declared, as applicable to this case. See, also, Coats v. Thread Co., 149 U. S., 562; McLean v. Fleming, 96 U. S., 251; Goodman v. Bohls, 3 Texas Civ. App., 183; Sanders v. Jacob, 20 Mo. App., 96.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

TARLTON, Chief Justice, did not sit in this case.

Application for writ of error dismissed by the Supreme Court for want of jurisdiction.