[Civ. No. 4137. First Appellate District, Division One.—July 3, 1922.]

## FANNY RIEGEL EVANS et al., Respondents, v. LAURA M. SHOCKLEY, Appellant.

[1] TRADEMARKS — PROPERTY RIGHTS — INJUNCTION. — Ownership of a trade name may be acquired either by a prior adoption within or without the state or by registering such name with the Secretary of State and such ownership may be transferred and the rights thus acquired are property rights and may be protected by injunction from invasion.

[2] ID.—ASSIGNMENT OF TRADEMARK—SEPARATION FROM BUSINESS—INJUNCTION.—An assignee of a registered trade name may be protected by injunction although he does not purchase or continue the business in connection with which the name has been used. (Opinion of supreme court withheld on denial of hearing.)

APPEAL from an order of the Superior Court of the City and County of San Francisco granting a preliminary injunction. E. P. Shortall, Judge. Affirmed.

The facts are stated in the opinion of the court.

Charles C. Boynton for Appellant.

Grove L. Johnson and Hiram W. Johnson, Jr., for Respondents.

---

1. Use of personal or corporate trade name as unfair competition, notes, 2 Ann. Cas. 415; 7 Ann. Cas. 806; 16 Ann. Cas. 596; Ann. Cas. 1918A, 229.

2. Assignability of trademarks and trade names, notes, 2 Ann. Cas. 218; Ann. Cas. 1917A, 260.

KNIGHT, J., *pro tem.*—This is an appeal by defendant, Laura M. Shockley, from an order awarding plaintiffs an injunction *pendente lite* restraining defendant from using upon any place of business conducted by her, or in which she might be interested, and in any advertising or printed, written, or painted matter, or in any linen, table coverings, napkins, or silverware, the name "Mary Elizabeth" or "Mary Elizabeth's" or "Mary Elizabeth of San Francisco," or any colorable simulation thereof.

The application for said injunction was heard and determined upon the allegations of the verified complaint and upon certain affidavits filed on behalf of the respective parties.

From the record presented on said application the following facts appear. About the year 1897, in the city of Syracuse, state of New York, one of the plaintiffs, Mary Elizabeth E. Sharpe (formerly Mary Elizabeth Evans), who was then thirteen years of age, began making and selling candies to her friends, which soon became known about that city as "Mary Elizabeth's" candies. Because of its good quality the candy soon came into much demand and in the year 1900 a copartnership was formed between the maker of said candies and the other plaintiffs herein and a place of business was opened in said city of Syracuse. The business rapidly developed and during the next few years tea rooms were opened and operated under the name "Mary Elizabeth's" in New York City, Boston, Syracuse, Newport, R. I., and in the city of Hamilton, island of Bermuda, all of which, except the one in Bermuda, were going concerns at the time of the commencement of this action. As a part of that business, confections and pastries of different kinds were made and sold under the name "Mary Elizabeth's," shipments of said products were made to various parts of the country, including California, and plaintiffs claim that said tea rooms and products have acquired a wide reputation in this country and abroad and that resulting therefrom a business of great value, alleged by plaintiffs to be worth $500,000, has been established under the name "Mary Elizabeth's." Under the terms of the lease, plaintiffs allege that they pay a rental of $40,000 per year for the New York tea room.

In 1914 plaintiffs trademarked the name "Mary Eliza-
beth's" in the United States patent office, Washington,
D. C., for candies, chocolates, jellies, marmalades, pre-
serves, etc., the same being affixed to these goods with
printed labels, etc.

In the year 1917 one William E. Harris and wife opened
a tea room in Los Angeles under the trade name "Mary
Elizabeth Tea Room" and filed with the Secretary of State
of this state, in accordance with section 3197 of the Polit-
ical Code, their trade name "The Mary Elizabeth Tea
Room." Thereafter, upon the objection of these plaintiffs
to the use of said name by said Harris and wife, the latter
ceased doing business under said trade name and assigned
said trade name and the right to exclusive use thereof to
the plaintiffs.

On May 9, 1921, the defendant, Laura M. Shockley, and
a partner (who retired from the firm prior to the com-
mencement of this action) opened a tea room at No. 445
Powell Street, San Francisco, near the St. Francis Hotel,
under the name of "Mary Elizabeth of San Francisco,"
and all of the linen used therein was marked and the silver
was engraved "Mary Elizabeth"; all advertising matter
also bore said trade name.

It appears from the evidence offered that because of the
use of said trade name, customers, particularly tourists,
would occasionally, from day to day, call at said tea room
so conducted by defendant and make inquiries as to whether
defendant had on sale the products of the plaintiffs and
that when reply was made in the negative, several inquirers
highly praised plaintiffs' products and advised defendant
to secure the agency, which she endeavored to do, but re-
ceived no reply to her letter.

According to plaintiffs' evidence, as soon as plaintiffs
learned of the defendant's appropriation of said trade
name they protested, because, it was claimed, the use thereof
was a source of confusion to the public and an injury to
plaintiffs' business.

On June 28, 1921, defendant filed with the county clerk
of the city and county of San Francisco, and thereafter
published in a newspaper, a certificate announcing that
defendant was doing business under the fictitious name of

"Mary Elizabeth of San Francisco" at number 445 Powell Street.

There is a dispute as to the reason why defendant adopted said trade name, but in this respect defendant admits that she had visited plaintiffs' place of business in New York city and "was agreeably impressed therewith." After plaintiffs had objected to the use of such trade name by defendant, negotiations were had between the parties for a settlement of their dispute and defendant finally agreed to accept from plaintiffs $250 to partly cover the expenditure she had been put to in advertising and buying equipment, but plaintiffs declined to pay any greater sum that $100. This action was thereupon commenced. There are, of course, many other facts stated by the affidavits and the verified complaint, but we think the foregoing statement is sufficient for the purposes of considering the law points involved.

[1] We are of the opinion that under the express statutory law of this state the lower court was justified, in view of the facts presented, in granting the preliminary injunction. The evidence shows without dispute that at the time of the commencement of the action plaintiffs were the exclusive owners of said trade name by reason, first, of the issuance of said certificate of registration by the federal government, and, secondly, by the recordation of said trade name with the Secretary of State in this state and the subsequent assignment thereof to plaintiffs.

Sections 3199 and 3197 of the Political Code provide:

"Sec. 3199. Any person who has first adopted and used a trade-mark or name, whether within or beyond the limits of this state, is its original owner. Such ownership may be transferred in the same manner as personal property, and is entitled to the same protection by suits at law; and any court of competent jurisdiction may restrain, by injunction, any use of trade-marks or names in violation of this chapter."

"Sec. 3197. Any person may record any trade-mark or name by filing with the secretary of state his claim to the same, and a copy or description of such trade-mark or name, with his affidavit attached thereto, certified to by any officer authorized to take acknowledgments of conveyances, setting forth that he (or the firm or corporation of

which he is a member) is the exclusive owner, or agent of the owner of such trade-mark or name."

These provisions seem to be clear and unambiguous. By them it is provided that ownership of a trade name may be acquired, either by a prior adoption within or without the state, or by registering such name with the Secretary of State. Here plaintiffs have done both. The statute also expressly provides that such ownership may be transferred. The rights thus acquired under the statute are property rights and may be protected, by injunction, from invasion. (*Spieker* v. *Lash,* 102 Cal. 38 [36 Pac. 362]; *Italian-Swiss Colony* v. *Italian Vineyard Co.,* 158 Cal. 252 [32 L. R. A. (N. S.) 439, 110 Pac. 913].)

[2] Appellant's principal contention on this branch of the case is that the acquisition by plaintiffs of the name "Mary Elizabeth Tea Room" conveyed nothing, as the right to an exclusive use of a name is postulated on the user of the name in connection with some business, and that since plaintiffs did not purchase the business from Harris and wife, nor continue its use, but only purchased the name, plaintiffs are not entitled to the relief sought.

We do not understand that such is the law. It should be borne in mind that in this particular phase of the case we are not dealing with the question of "unfair competition," but with property rights. If plaintiffs were seeking the injunction upon the single theory that it was a case of unfair competition, appellant's point might be well taken.

There is nothing in the code sections above quoted, we think, to justify appellant's contention in this respect, and certainly we are not allowed to enlarge upon the provisions of the statute.

The principle that an assignee of a trade name, who does not purchase or continue the business, may be protected by an injunction under the provisions of said code sections above quoted, seems to be recognized in *Spieker* v. *Lash, supra.*

Appellant's final contention to the effect that plaintiffs have no right to an injunction because it does not appear that they have suffered irreparable injury or damage is also, we think, without merit. Dealing with the question as we have, from the standpoint of the invasion of property

rights, it was a proper case for injunction. (*Regis* v. *Jaynes,* 185 Mass. 458 [70 N. E. 480], cited with approval in *Modesto Creamery* v. *Stanislaus Co.,* 168 Cal. 289 [142 Pac. 845].)

Holding, as we do, that the preliminary injunction was properly issued, under the theory that plaintiff's property rights have been invaded, it is unnecessary to discuss the question of "unfair competition."

The order appealed from is affirmed.

Kerrigan, J., and Tyler, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on August 2, 1922, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 31, 1922, and the following opinion then rendered thereon:

THE COURT.—The application for an order that the above-entitled cause be heard and determined by this court after judgment by the district court of appeal is denied.

In so doing we do not at this time either approve or disapprove that portion of the opinion which holds that a registered trademark or trade name can be lawfully transferred so as to separate it from the business or commodity to which it pertains. That holding was not necessary to the decision, because the order appealed from is sufficiently supported by the showing made in the trial court in support of the claim of unfair competition.

Myers, J., *pro tem.,* Lennon, J., Waste, J., and Lawlor, J., concurred.