## METCALF v. HANOVER STAR MILLING CO.†

### (Circuit Court of Appeals, Fifth Circuit. April 8, 1913.)

### No. 2,476.

1. TRADE-MARKS AND TRADE-NAMES (§ 68*)—UNLAWFUL COMPETITION—INFRINGEMENT—PRIOR USE.

Infringement of a trade-mark is inseparably involved in a suit for unlawful competition: the right to protection against the latter depending on first and exclusive use.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 79: Dec. Dig. § 68.*]

2. TRADE-MARKS AND TRADE-NAMES (§§ 53, 68*)—"INFRINGEMENT"—"UNFAIR COMPETITION"—WHAT CONSTITUTES.

"Infringement" of a trade-mark is the wrongful copying of a mark and sending forth thereunder an article well calculated to be taken for one already established in the trade, being regarded in the law as analogous to a trespass; while "unfair competition" consists in placing on the established trade of another an article or commodity dressed so as to be very like the other, and palming off the imitation as the original.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 61, 79; Dec. Dig. §§ 53, 68.*

For other definitions, see Words and Phrases, vol. 4, pp. 3590–3594; vol. 8, p. 7174.]

3. TRADE-MARKS AND TRADE-NAMES (§ 81*)—PROTECTION—REQUISITES.

Right to protection of a trade-mark primarily depends on first invention or prior adoption and original exclusive use; this entitling the appropriator to common-law protection against similar and deceptive dressing coupled with fraudulent misrepresentation.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 91; Dec. Dig. § 81.*]

4. TRADE-MARKS AND TRADE-NAMES (§ 81*)—UNFAIR COMPETITION.

To invoke the jurisdiction of equity to prevent infringement and unfair competition in the use of a trade-mark by another, it is incumbent upon complainant to show that he has a property right in the mark or thing which indicates the ownership or origin of the article, and that its use has been fraudulently invaded by the defendant, which property right is acquired chiefly by prior adoption and exclusive use of the mark or symbol relied on to distinguish complainant's proprietorship.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 91; Dec. Dig. § 81.*

Unfair competition in use of trade-mark or trade-name, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

5. TRADE-MARKS AND TRADE-NAMES (§ 93*)—UNLAWFUL COMPETITION.

In a suit for infringement of complainant's "Tea Rose" trade-mark on flour and for unlawful competition, evidence *held* to require a finding that complainant was not the originator or first appropriator of such name and mark as applied to flour, but that both defendant and another milling concern had used the mark and name in that connection long prior to complainant's adoption thereof, and that it was therefore not entitled to relief.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 104–106; Dec. Dig. § 93.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied June 2, 1913.

6. TRADE-MARKS AND TRADE-NAMES (§ 32*)—ABANDONMENT—EVIDENCE.

 Abandonment of a trade-mark will not be found, unless supported by proof of a clear intention of the owner to entirely discontinue its use.

 [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 36; Dec. Dig. § 32.*]

Appeal from the District Court of the United States for the Middle District of Alabama; Thomas G. Jones, Judge.

Suit by the Hanover Star Milling Company against D. D. Metcalf. From a decree granting a temporary injunction, defendant appeals. Reversed and remanded, with directions to dismiss.

Edward Everett Longan, of St. Louis, Mo., J. Fred Gilster, of Chester, Ill., Lane & Lane, and C. F. Winkler, for appellant.

Clarkson & Morrisette, of Tuscaloosa, Ala., and London & Fitts, of Birmingham, Ala., for appellee.

Before PARDEE and SHELBY, Circuit Judges, and SHEPPARD, District Judge.

SHEPPARD, District Judge. This is an appeal from the District Court of the Middle District of Alabama from an order allowing a temporary injunction against the plaintiff in error, hereafter designated defendant, by the Hanover Star Milling Company, a corporation of Germantown, Ill., hereafter referred to as plaintiff, for infringement and unfair competition under plaintiff's alleged trade-mark "Tea Rose."

The bill, in so far as it is necessary to consider to determine the merits of the controversy, charges substantially: That the plaintiff, Hanover Star Milling Company, for 27 years had been engaged at Germantown, Ill., in the manufacture of a popular grade of flour called "Tea Rose." That for 12 years this flour had been upon the market in Alabama in sacks or bags under the distinctive label or stencil brand similar to the following cut:

| Hanover Star Milling Co. [Design] TEA ROSE Special Patent Flour GERMANTOWN, ILL. TEA ROSE. | [Design of green rose with yellow leaves, design turned to right, and consists of one large rose, a half-open rose and small bud, etc.] |
|---|---|

That by maintaining a high grade of flour under this brand, and by extensive advertising, plaintiff enjoyed a lucrative trade in its Tea Rose flour, and by reason of the reputation of the Tea Rose was enabled to sell to the trade in Alabama, Georgia, and Florida large quantities of other flour of its manufacture. That defendant, Metcalf, had invaded its territory in Alabama, and was offering and selling in Butler county, Ala., a product of the Steeleville Milling Company,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

located at Steeleville, Ill., a flour different from that made and sold by plaintiff in packages substantially identical with those used by plaintiff in marketing its Tea Rose flour, the similarity of brand and stencil picture being shown by appropriate exhibits to the bill, which disclose such an imitation or dressing of the package as might well mislead the trade of the Hanover Star Milling Company's product, named "Tea Rose." That Metcalf by the use of such wrappings, and by his misrepresentations that the Steeleville article is the original Tea Rose flour, constitutes unfair competition against plaintiff. Wherefore plaintiff seeks relief in equity.

Defendant, Metcalf, answered the bill, and denied specifically: The allegations of deception and misrepresentations in connection with the sale in Butler county, Ala., of the Steeleville article of flour called "Tea Rose." That he had sold and delivered as a merchant in business at Greenville, Ala., 40 barrels of the manufacture of the Steeleville Milling Company at Greenville, Ala., in packages stamped as here shown:

| |
|---|
| Steeleville<br>ROLLER MILLS<br>[Design]<br>TEA ROSE<br>Guaranteed by<br>Steeleville Milling Co.<br>under Food & Drugs Act,<br>June 30, 1906. Serial No. 15304.<br>Steeleville Milling Co.<br>Steeleville, Ills.<br>24 Lbs. TEA ROSE Flour<br>Bemis, St. Louis. |

[Design of yellow rose with green leaves, the design turned to the left, and consists of one large rose, a half-open rose, and a small bud, etc.]

That it was not represented as the Hanover Star Milling Company's flour, and that no deceit was practiced in the sale thereof. Further answering, defendant denied that plaintiff was the first to appropriate the name "Tea Rose" in the manufacture of flour; that the name "Tea Rose" had been appropriated as a brand of flour by the firm of Allen & Wheeler, of Troy, Ohio, long before plaintiff's use, and as early as 1872; that the Steeleville Milling Company has used the Tea Rose brand on flour for more than 16 years, and that for 6 years prior to plaintiff's suit the Steeleville Milling Company had been selling, with plaintiff's knowledge, to the trade in portions of Mississippi and parts of Alabama, flour in packages stamped with the cut above indicated.

The cause was submitted on bill, answer, and exhibits; and thereupon a temporary restraining order was granted, from which defendant prosecuted his appeal to this court on several grounds of error, which may be considered for the purpose of this review in one assignment—that the court erred in not denying the preliminary injunction, on the ground that the plaintiff was not the owner of the trademark "Tea Rose," and that defendant had not engaged in unfair competition.

[1, 2] The question mainly presented is unfair competition, but in the light of the authorities infringement is inseparably involved, and the right to protection against the latter depends upon the antecedent fact of first and exclusive use. Infringement is the wrongful copying and sending forth of an article well calculated to be taken for one already established in trade, and is regarded in the law as analogous to a trespass. Unfair competition consists in placing on the established trade of another an article or commodity dressed so as to be very like the other and "palming off" the imitation as the original.

[3] This leads us necessarily to ascertain what constitutes one's right in a trade-mark which the law undertakes to protect. Primarily, first invention, use, or adoption assures to the originator or owner protection from infringement. Prior adoption and original exclusive use entitles the first appropriator to the common-law protection against similar and deceptive dressing coupled with fraudulent misrepresentation. Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537, 11 Sup. Ct. 396, 34 L. Ed. 997; Hopkins, Trade-Marks (2d Ed.) § 30.

It does not comport with the purpose of the law to put any barriers in the way of commercial intercourse or to interfere with fair competition. It is to the best interests of society that commerce be left to the adjustment of the law of supply and demand. There are, however, exclusive property rights in trade-marks and names which may have been adopted by one to indicate his ownership, which are recognized and protected by the common law, to the extent that another will not be allowed to appropriate the name, mark, or symbol to enable the imitator to palm off on the established trade of the originator a different article or commodity, though it might be in every respect equal in quality to the original mark or brand. Such imposition constitutes what is technically termed unfair competition, which the law undertakes to prevent. Trade-Mark Cases, 100 U. S. 82, 25 L. Ed. 550.

[4] To invoke the jurisdiction of a court of equity to prevent infringement and unfair competition by the use of a similar trade-mark by another, it is incumbent upon the complainant to show that he has a *property right* in the mark or thing which indicates the ownership, or origin, of the article, and that its use has been fraudulently invaded by another. Columbia Mill Co. v. Alcorn, 150 U. S. 460, 14 Sup. Ct. 151, 37 L. Ed. 1144; Epperson & Co. v. Blumenthal, 149 Ala. 125, 42 South. 863, 13 Ann. Cas. 832. The property right in a trade-mark is acquired chiefly, as we shall see, by prior adoption and exclusive use of the mark or symbol relied upon to distinguish the proprietor's ownership. The exclusive right to the use of a trade-mark rests, not so much on priority of invention, but upon such use as to indicate the origin of the plaintiff's goods, and must be early and separate enough for that purpose. Where long use is clearly shown, the mere fact that the owner has permitted the limited use by another, if such use was not calculated to mislead, will not defeat the owner's right to protection.

[5] On the question of first appropriation and exclusive use, which we have seen are the indicia of plaintiff's title, let us advert briefly to the bill and the evidence in support of its allegations on this point.

The bill avers that the plaintiff for 27 years had given the name "Tea Rose" to a flour manufactured by it; but nowhere does it state definitely the time of its first use, or when it was adopted as a mark of distinction, or when its exclusive use began, except the general allegation that plaintiff had marketed flour in Alabama for 12 years under the distinctive wrappings indicated in the cut, in which Tea Rose occurs in the ellipse after the name of the manufacturer. It is shown by several depositions in support of the bill that plaintiff had established quite an extensive trade in the particular brand of flour in Alabama and parts of Georgia, Florida, and Mississippi, over a period of from five to seven years; that it had encountered no competition in this territory from defendant until about two years ago it discovered a small shipment of defendant's brand at Tupelo, Miss., and later a shipment at West Point, Miss., to the time in February, 1912, when it is alleged Metcalf received the car load at Greenville, Ala., which precipitated the present litigation. Opposed to this array of fact by the plaintiff, the defendant's showing is that in 1899 to 1903, inclusive, it sold at divers points in Alabama and Mississippi car load lots of its Tea Rose flour under the distinctive wrappings indicated by the Steeleville Milling Company's cut, and that for 16 years flour bearing the identical trade-mark exemplified in defendant's cut had been sold by defendant in car lots in the states of Illinois, Tennessee, Louisiana, Mississippi, and Arkansas, including one lot in Alabama as long ago as 1899. It is further shown by defendant's exhibits that the Tea Rose label was first used as a trade-mark and stamped on flour manufactured by Allen & Wheeler, of Troy, Ohio, as early as 1872, and had been continuously used by said firm and its successors up to the time of this suit. It also was shown by the records of a bag factory of H. & L. Bag Company of St. Louis, which makes bags for both plaintiff and defendant, that the orders of the Steeleville Milling Company for sacks labeled with the print containing Tea Rose mark identical with that appearing in defendant's cut antedated the orders of the plaintiff's Tea Rose print fully three years.

From this summary of the evidence, at most, it does not appear that there is any preponderance favoring the contention that the plaintiff was the first appropriator of the trade-mark Tea Rose, or that it had the exclusive right to the use of the label in the territory to which it sets up exclusive title—neither on the ground of first or prior appropriation, because by a clear preponderance of the evidence the name "Tea Rose" had been adopted as a brand of flour many years previous to plaintiff's use of the phrase for same purpose; nor on account of abandonment by the first claimant, or such intermittent use of the trade-mark by the first owner as would justify the adoption by another on that ground. On the contrary, the proofs show that defendant was for 16 years consecutively supplying an extensive trade under that particular brand in Illinois, Tennessee, Indiana, Arkansas, and Mississippi, with occasional shipments into Alabama. During most of this period bags stamped with the distinctive labels of both plaintiff and defendant were turned out by the same factory. The evidence in our opinion points indubiously to Allen & Wheeler as having first adopted the Tea Rose brand for their flour in 1872. Whether this use was so

general or continuous as to exclude any other appropriation or entitle them to protection, the evidence shows conclusively that the use by the Steeleville Milling Company of this brand, commencing in 1895, was so extensive and continuous throughout a large territory as in our judgment would wholly exclude the claim of the Hanover Star Milling Company to either act of first appropriator or exclusive use in any of the territory from which it seeks to expel defendant.

[6] Abandonment, as we have seen, must be supported by a clear intention of the owner to discontinue the use of the trade-mark. The evidence does not show any purpose on the part of defendant, in our opinion, to abandon the use of the Tea Rose in the territory generally occupied in its trade. Nor does the evidence support the right of the plaintiff on any theory of "transitory, spasmodic, or inconsiderable" use by the defendant of the trade-mark in the territory by it previously occupied. Hopkins, Trade-Marks (2d Ed.) 54; O'Rourke v. Central City Soap Co. (C. C.) 26 Fed. 576; Heublein v. Adams (C. C.) 125 Fed. 782; Levy v. Waitt, 61 Fed. 1008, 10 C. C. A. 227, 25 L. R. A. 190.

It appears to be well settled by authority that the first use of a trade-mark gives to the prior user the exclusive right to its use in trade to a commodity to which it is applied. George v. Smith (C. C.) 52 Fed. 830. Nor is property in a trade-mark limited to its enjoyment by territorial bounds, but may be asserted and protected wherever the law affords a remedy for wrongs. Saxlehner v. Eisner & Mendelson Co., 179 U. S. 19, 21 Sup. Ct. 7, 45 L. Ed. 60; Derringer v. Plate, 29 Cal. 292, 87 Am. Dec. 170.

The Steeleville Milling Company's first use, and its extensive and continuous use, established by the evidence, in the territory of its selection, gave it the unqualified right to extend unhampered its trade in flour under the Tea Rose brand into any part of the United States, and that, too, without incurring the legal odium of unfair competition. To entitle the plaintiff to protection against unfair competition in the dress of goods, it should be clearly shown that he had established the exclusive right by prior adoption to dress his goods in the manner claimed. Coats v. Merrick Thread Co., 149 U. S. 562, 13 Sup. Ct. 966, 37 L. Ed. 847; Dietz v. Horton Mfg. Co., 170 Fed. 865, 96 C. C. A. 41.

We have seen that, before there can be any infringement of a trade-mark, it should appear by a clear preponderance of the evidence that complainant was the first to appropriate the mark or symbol, and his exclusive use depends upon prior appropriation. The proofs show that Allen & Wheeler were the first to appropriate the Tea Rose brand as early as 1872, and that its use by the Steeleville Milling Company began in 1895, three years before the first order for sacks bearing that dress by the Hanover Star Milling Company. Columbia Mill Co. v. Alcorn, supra; Levy v. Waitt (C. C.) 56 Fed. 1016.

In arriving at this conclusion, we have not overlooked the Baltimore Club Whisky Case (Carroll v. McIlvaine [C. C.] 171 Fed. 125), decided by Judge Hough, and emphasized by counsel for plaintiff. The distinguishing fact of that case, and upon which the decision doubtless turned, was the limited territory employed by the Baltimore

vendors of the article called "Baltimore Club," which appears to have been confined to the city of Baltimore before it was "introduced" to the trade in New York. The liquid blend of the same name in New York, if it did not enjoy a name so ancient, was equally as popular and covered a more extensive territory; and while apparently the case did not turn on that point, the sounder reason for the decision may have been put on the fact that, while the original Carroll began to sell Baltimore Club not earlier than 1870, the original McIlvaine, the New York vendor, as ascertained by the learned judge, "sold Baltimore Club whisky and obtained a considerable market for same as early as 1868."

From the facts disclosed by the record and summarized in this opinion, in the light of the authorities, we conclude that the plaintiff had no exclusive right to Tea Rose as a trade-mark for flour anywhere, and that Metcalf, by selling to his trade in Alabama the Tea Rose brand of the Steeleville Milling Company manufacture, was not engaged in such unfair competition as would authorize the jurisdiction of a court of equity to prevent.

The restraining order, therefore, should be dissolved, and the bill dismissed; and the order will be accordingly that the decree is reversed, and the cause remanded, with directions to dismiss the bill.