WISCONSIN WHITE LILY BUTTER COMPANY, Appellant,
vs. SAFER, Respondent.

*October 19—November 13, 1923.*

*Trade-marks and trade-names: Unfair competition: Use of trade-
mark in other business: Sale: Abandonment: Adoption.*

1. A trade-mark, in the law, is a symbol or device associated with
   a business in such way as to indicate origin and quality of
   articles sold thereunder in good faith; and when it is used
   for a sufficient length of time for the public to associate it
   with an article purchased, it is a valuable right which the
   law will protect.  p. 74.
2. The public has an interest in a trade-name to the extent that
   the courts will not tolerate a fraud by allowing a name to
   be used in connection with another business or upon dif-
   ferent articles or inferior articles from those with which it
   was first associated or adopted.  p. 74.
3. A trade-mark can be sold or assigned only in connection with
   the business to which it is attached.  p. 74.
4. A trade-mark may be abandoned, and in such case may be
   adopted by another who appropriates and uses it in good
   faith; but it may not be adopted so long as it is lawfully
   used by another in his business to the knowledge of the per-
   son seeking to adopt it.  p. 74.
5. Where a trade-mark was used on wrappers of print butter for
   many years and was registered in the government patent
   office, a milk-producing association could not secure any right
   therein by adoption, and if it had the right to use the trade-
   mark it could not license the defendant to use the same in-
   dependent from the business of the association.  p. 75.

APPEAL from a judgment of the circuit court for Milwau-
kee county: OSCAR M. FRITZ, Circuit Judge.  *Reversed,
with directions.*

The appeal is from a judgment dismissing the plaintiff's
complaint.

Action for an injunction to prevent the defendant from
using a certain trade-mark claimed by the plaintiff.  The
case was tried before the court, which made findings of fact
and conclusions of law, and thereupon entered judgment
dismissing the plaintiff's complaint.  The plaintiff appeals.

For the appellant there was a brief by *Rubin, Wurster & Rouiller* of Milwaukee, and oral argument by *W. B. Rubin.*

For the respondent the cause was submitted on the brief of *Bohmrich & Gabel* of Milwaukee.

CROWNHART, J.  It appears to be undisputed that one John E. Boettscher and his father before him used the trademark "White Lily Brand" for wrappers on print butter sold by them to the trade in Milwaukee and elsewhere in 1895, and that they continued to use such trade-mark up until the year 1913, when they abandoned it and went out of business. Thereupon S. Leshin adopted said trade-mark in good faith and used the same for wrappers on print butter sold to the trade in Milwaukee, continuously from 1913 until March 18, 1922.  At that time Mr. Leshin sold his butter business, together with the good will thereof and all his interest in said trade-mark, to the plaintiff corporation, of which he became president, and the plaintiff corporation continued the business and the use of said trade-mark in the business to which it succeeded Mr. Leshin.  It also appears without dispute that in May, 1917, Mr. Leshin had such trade-mark duly registered in the patent office of the United States government.  During the time he was in the butter business Leshin purchased and sold a substantially high-test, uniform grade of butter of similar flavor, color, and salt content, and thereby built up a large and satisfactory trade in his butter under such trade-mark.  The plaintiff, after succeeding to such business, continued satisfactorily to supply the former customers of Mr. Leshin with the White Lily Brand of butter.

The defendant attempts to trace his title to the trademark through various parties, to wit: George H. Barber used the label "White Lily Creamery Brand" for many years, beginning in 1903 or 1904.  In 1911 he sold one of his creameries to a man by the name of Malone, but he did not sell the good will in his butter business or sell the

trade-mark or the right to use it to Malone; on the contrary, he continued in the butter business and continued to use his trade-mark until the year 1915, when he sold out his business to one Groth and abandoned the trade-mark. Malone used the trade-mark in connection with his creamery, which he purchased from Barber, more or less until 1916, when he sold his business to the Milwaukee Milk Producers' Association, who continued to use the trade-mark up to February 1, 1922, at which time the company went out of the butter business. At that time the company had on hand some 24,000 labels bearing such trade-mark, which it sold to the defendant, *Safer,* with the permission that he might use the same in his business of selling butter. *Safer* thereupon used said labels until they were exhausted, when he and Mr. Rice, the manager of the Milwaukee Milk Producers' Association, had some arrangement, by which Rice prepared a printer's copy, for *Safer* to continue the use of the trade-mark by having *Safer's* name and address put on the labels instead of that of the Milwaukee Milk Producers' Association, and *Safer* was to pay for the use of the name in case the Milwaukee Milk Producers' Association could establish its right to sell the same.

It is also undisputed that the defendant, *Safer,* through his son and others, solicited the customers of the plaintiff in Milwaukee, represented that he was the owner of the trade-mark "White Lily Brand," and had the sole right to use it; that he sold inferior butter at a lower price than the plaintiff sold his butter, and thereby he secured some of the trade from customers of the plaintiff. It further appears that neither the plaintiff nor Mr. Leshin knew of the use of the trade-mark by Barber, Malone, or the Milwaukee Milk Producers' Association. It likewise appears that neither Barber nor Malone knew of the use of the label by Mr. Leshin. Neither did the Milwaukee Producers' Association know of such use by Leshin when it commenced the use thereof, but it did know of such use at the time it entered

into the arrangement with the defendant, *Safer*. It is upon the foregoing undisputed facts that the court must determine the law in this case.

A trade-mark in the law is a symbol or device associated with the business in such a way as to indicate origin and quality of articles sold thereunder in good faith, and when so used for a sufficient length of time that the public associates such trade-mark with the article purchased from the user of it, such user has a valuable right therein and will be protected in such right. Hopkins, Trade-marks (3d ed.) pp. 72, 73. The public have an interest in the trade-name to the extent that the courts will not tolerate a fraud upon the public by allowing a name to be used in connection with another business, or upon different articles or inferior articles from those with which it was first associated or adopted. *Avenarius v. Kornely,* 139 Wis. 247, 121 N. W. 336. A trade-mark cannot be sold or assigned independent of the business to which it is attached. It cannot be assigned or its use licensed except as incidental to the transfer of the business or property in connection with which it has been used. *Rodseth v. Northwestern M. Works,* 129 Minn. 472, 152 N. W. 885; *Detroit C. Co. v. Velvet Brand I. C. Co.* 187 Mich. 312, 153 N. W. 664; 28 Am. & Eng. Ency. of Law (2d ed.) 405; 38 Cyc. 684; *Mayer F. & J. Co. v. Virginia-Carolina C. Co.* 35 App. D. C. 425. A trade-mark may be abandoned, and in such a case the abandoned trade-mark may be adopted by another who appropriates and uses the same in good faith. 38 Cyc. 879; *Brower v. Boulton,* 53 Fed. 389; Hopkins, Trade-marks (3d ed.) p. 70. But a trade-mark may not be adopted so long as the same is lawfully used by another in his business to the knowledge of the person seeking to adopt it. *O'Rourke v. Central City S. Co.* 26 Fed. 576; *Metcalf v. Hanover S. M. Co.* 204 Fed. 211.

Applying these well-established principles of law to the instant case, it will be seen that Barber had no right to the

trade-mark in question, for at the time he started to use it Boettscher was the owner and user thereof; that Malone did not secure any license, privilege, or use of the trade-mark in question from Barber, and not having any such right he could not transfer, and did not transfer, any such right to the Milwaukee Milk Producers' Association. The Milwaukee Milk Producers' Association could not secure any such right by adoption because the trade-mark was already in use in good faith by Leshin long prior to its use by the Milwaukee Milk Producers' Association, and even if it had any title or right in said trade-mark it could not license the defendant, *Safer,* to use the same independent from the business of the Milwaukee Milk Producers' Association. It is plain that *Safer* obtained no right to the trade-mark through any license or assignment by the Milwaukee Milk Producers' Association.

This court holds that the plaintiff is the lawful owner of the trade-mark in question, with the exclusive right to use the same in the Milwaukee market. The circuit court should have granted the prayer of the plaintiff and enjoined the defendant from the use of such trade-mark.

*By the Court.*—The judgment of the circuit court is reversed, with directions to issue an injunction restraining the defendant, *Safer,* from using the trade-mark "White Lily Brand Butter" or "White Lily Creamery Brand Butter" in connection with the sale of butter in the city of Milwaukee and vicinity.