**SELCHOW & RIGHTER CO. v. WESTERN PRINTING & LITHOGRAPHING CO. et al.**

**No. 110.**

District Court, E. D. Wisconsin.

Sept. 11, 1939.

Axel V. Beeken, of New York City, for plaintiff.

Foley & Brach, of Racine, Wis., for defendants.

DUFFY, District Judge.

This is a motion by the plaintiff for a temporary injunction to restrain the defendants during the pendency of this action from making, selling, distributing, or offering for sale, games under the name of "Parcheesi", "Parchesi", "Pachisi", or any other similar word. The defendant Western Printing and Lithographing Company is the manufacturer and owns all of the capital stock of the defendant Whitman Publishing Company; the latter acts as sales agency. For convenience, both will be referred to hereafter as the defendant.

The complaint alleges that the plaintiff is the owner of trade mark "Parcheesi" for games and of the U. S. trade mark registration No. 123033 of October 8, 1918, renewed September 6, 1938. The plaintiff claims that since 1869 it and its predecessors have used the name "Parcheesi" as a trade mark on board and counter games manufactured and sold in interstate commerce; that they have built up a good will in the business and acquired common law rights in the mark by virtue of continuous and exclusive use and advertising; that

the trade mark "Parcheesi" became known to and recognized by the trade, dealers in and users of the game, and the public generally, as being their trade mark and indicating goods manufactured and sold by them. The complaint shows that the suit is brought against the defendants not only for infringement of said registration and of the common law rights of the plaintiff in said trade mark, but also for unfair competition.

The game "Parcheesi" is played upon what appears to be a heavy cardboard, which folds in the center. On or about April 1, 1939, the defendants caused to be manufactured and thereafter distributed to the trade, a game known as "Parchesi". It was very similar in appearance to the game manufactured and sold by plaintiff. Exhibit D–1 is plaintiff's game. The outer cover is black and in about the center of the cover the following appears in gold letters on a dark blue background:

A Royal Game of India

PARCHEESI

Popular Edition

The game which the defendants brought out, which is Exhibit C–1, has a dark blue cover, and at about the center of the cover there appears the following:

PARCHESI

A Game of India

These letters are also in gold and while the letters are somewhat different type, yet they are about the same size in each case. The boxes containing the dice, dice cups and counters are somewhat different in shape, but on the cover of each are exactly the same inscriptions as hereinbefore described.

For some years previous, the defendant, as well as other toy manufacturers, has sold to the trade the same game, but under the name of "India". There is no claim by the plaintiff that it is entitled to the exclusive use of the game as such, but plaintiff does contend that it is entitled to protection in the use of the name "Parcheesi", or any such variation of that name which would confuse and deceive the public. After the commencement of the suit, the defendant alleged in its answer that it had ceased to manufacture the game under the appearance as indicated by Exhibit C–1, but asserts its right to manufacture, sell and distribute said game under the name of "Pachisi", but with the cover in a red or orange color, and with the words thereon appearing in white letters; and there has been submitted to the court a sample in which the following appears, printed on a red background:

Whitman's

PACHISI

A Game of India

While the name "Whitman" and the words "A Game of India" appear in block letters, the word "Pachisi" is enclosed in a scroll, and is in exactly the same form and size as appears on the cover of Exhibit C–1. The plaintiff then filed a supplemental bill, asking that the defendants be restrained from the use of "Pachisi".

The defendant earnestly contends that it is wholly within its rights in manufacturing and selling the game under the name "Pachisi" in a different color and style than the game manufactured and sold by the plaintiff. Defendant contends first that the plaintiff's trade mark is invalid, because of alleged false statements made in the application for registration. The President of Essanar Company, Inc., in the application, stated that the trade mark has been continuously used in the applicant's business and the business of its predecessors in title since 1869, and that no other person, firm, or corporation had a right to use said trade mark. Defendant contends that this statement was untrue because of certain licensing agreements which are set forth in detail in the moving papers herein. Defendant further contends that even though the registration would be held to be valid, the name "Parcheesi" was not properly the subject of a trade mark because generic and descriptive words are not subject to exclusive appropriation as trade marks. It appears that a very similar game was played in India for many years. The highest count that could be made in the Indian game was twenty-five, and the Hindustani word for twenty-five sounded similar to "Parcheesi" or "Pachisi". Defendant contends that inasmuch as "Parcheesi" is, in effect, a translation of the Hindustani word meaning twenty-five, it cannot, under cases cited, be the basis of a trade mark in this country. Defendant further contends that the plaintiff has not shown a secondary meaning of the word "Parcheesi" or any palming off of the defendant's game as that of the plaintiff. Defendant further contends that the plaintiff has abandoned its trade mark, perhaps not intentionally, but due to the operation of the law.

■ These defenses do raise serious questions and if there was nothing further in the case, it is very doubtful whether a preliminary injunction should be issued. It is well settled, of course, that if there is doubt as to the plaintiff's right to relief, a preliminary injunction should not be issued. Murray Hill Restaurant, Inc., v. Thirteen Twenty One Locust, Inc., 3 Cir., 98 F.2d 578; Best Foods, Inc., v. Hemphill Packing Company, D.C., 295 F. 425; American Mercury, Inc., v. Kiely, 2 Cir., 19 F.2d 295.

It is very evident that an ordinary customer, going into a store and asking for the game "Parcheesi", has no information as to who might have manufactured and produced that game. Not one purchaser in a thousand would know or care whether Selchow and Righter Company was the publishers or manufacturers. However, it clearly appears that those in charge of buying toys for large stores and retail outlets have for many years associated the name of the plaintiff with the game of "Parcheesi". It further appears that retail stores that had in stock the same game under the name of "India" also found it necessary, because of public demand, to keep on hand a stock of "Parcheesi". The business of the plaintiff and its predecessors has been, since 1869, very largely based on and centered around the game of "Parcheesi". Many thousands of dollars have been spent by the plaintiff and its predecessors in building up a good will for the game under the name of "Parcheesi".

Plaintiff sells to nearly 3,000 concerns in all parts of the country, many of which are wholesale distributors. The game "Parcheesi" is on sale in about 10,000 stores throughout the country. The affidavit of Harriet T. Righter, president of the plaintiff corporation, shows that expenditures for advertising the game "Parcheesi" amounted to more than twenty-five thousand dollars from 1886 to 1896, and twenty-five thousand dollars from 1903 to 1919; and that since 1910 more than one hundred forty thousand dollars has been expended in advertising.

■ Nims on Unfair Competition and Trade Marks, 3d. Ed., p. 39, says: "Money invested in advertising is as much a part of a business as if invested in buildings or machinery, and when the goods of a manufacturer have become popular, not only because of their intrinsic worth, but also by reason of the ingenious, attractive and persistent manner in which they have been advertised, the good will thus created is entitled to protection against unfair competition." Hilson Co. v. Foster, C.C., 80 F. 896.

From 1917 to 1938 the plaintiff corporation has sold more than 4,000,000 games of "Parcheesi". Although the defendant was selling the same game under another name, it apparently desired to cash in and receive the benefit of the good will which the plaintiff and its predecessors had built up during more than seventy years of business activity.

"Injury to good will, actual or threatened, lies at the basis of the unfair competition action." Nims on Unfair Competition and Trade Marks, 3d. Ed., p. 51.

■ It is not necessary at this time to pass upon the various defenses raised by the defendant other than to indicate that they raise serious questions. However, it does appear, at this stage of the proceedings, that the plaintiff has made out a case of unfair competition which would entitle it to a temporary injunction. The right to relief by reason of unfair competition may arise from the misuse of words, marks, or symbols which are free to everybody to use and are not subject to exclusive appropriation by anybody. The existence of this right of action depends upon a question of fact; whether what is done by the defendant tends to injure another unfairly. Nims on Unfair Competition and Trade Marks, 3d Ed., p. 3. It has been held that unfair competition is distinguishable from the infringement of a trade mark in this: that it does not involve necessarily the question of exclusive right of another to the use of the name, symbol or device. A word may be purely generic or descriptive, and so not capable of becoming an arbitrary trade mark, and yet there may be an unfair use of such word or symbol which will constitute unfair competition. G. W. Cole Co. v. American Cement Co., 7 Cir., 130 F. 703, 705.

As was stated in a Wisconsin case (Wisconsin White Lily Butter Co. v. Safer, 182 Wis. 71, 74, 195 N.W. 700,), according to Nims, p. 31: " 'The public have an interest in the trade-name to the extent that the courts will not tolerate a fraud upon the public by allowing a name to be used in connection with' a business or article other than that with which it was first used."

A good statement of the law appears in Nims on Unfair Competition and Trade Marks, 3d. Ed., p. 38: "The difference most often noted between technical trade mark cases and those involving unfair competition seems to rest on the fact that, in technical trade mark cases, the marks involved are words or insignia which may be appropriated to the use of one person exclusively, while in unfair competition cases the words or insignia involved may be of such character that others may use them. Geographical and personal names, colors and numerals are of such a character. Yet this limited right, under modern conditions, often is of great value, so great indeed that, in these cases, it commonly is termed property."

■ But defendant contends that with the cover of their game "Pachisi" appearing in red or orange, and with the name "Whitman" appearing prominently, a purchaser could not believe that he was buying the plaintiff's game; however, it is not controlling whether two articles are readily distinguishable when set side by side, but whether the general impression made by defendant's article upon the eye of a casual customer, who is unsuspicious and off his guard, is such as to likely result in his confusing it with the original article. Notaseme Hosiery Co. v. Straus, 2 Cir., 201 F. 99; Straus v. Notaseme Hosiery Co., 240 U.S. 179, 36 S.Ct. 288, 60 L.Ed. 590; Nims on Unfair Competition and Trade Marks, 3d. Ed., p. 323.

As to the difference in color, the court in Schmidt v. Brieg, 100 Cal. 672, 35 P. 623, 625, 22 L.R.A. 790, said: "In fact the only material difference between the two labels in design and appearance exists in the colors, but this is no defense. * * * The difference in color is a mere probative fact,—a circumstance to be considered by the court in determining the ultimate question as to whether the defendants' devices so closely resembled the plaintiffs' labels as to deceive the public. * * *"

■ Exhibit C–1, which was produced and distributed to the trade by defendant before the commencement of this action, had a very great deceptive resemblance to plaintiff's game, Exhibit D–1. There was apparently a deliberate attempt to imitate the plaintiff's game as much as possible without making an exact duplicate. It was not playing the game fair, and as Nims on Unfair Competition and Trade Marks, 3d Ed., p. 25, puts it: "This action of un-fair competition is the embodiment in law of the rule of the play ground,—'Play fair!'"

In the leading case of Le Blume Import Company v. Coty, 2 Cir., 293 F. 344, 349, the court said: "In Regis v. Jaynes & Co., 185 Mass. 458, 70 N.E. 480, the plaintiff, who used the word 'Rex' as a trade-mark, was held entitled to restrain the defendant from using the word 'Rexall' in connection with similar articles. In Steinway & Sons v. Henshaw, 5 R.P.C. 77, the makers of the 'Steinway Pianos' were held entitled to restrain a competitor from using the name 'Steinberg Pianos,' because of the general resemblance of the names. In Estes v. Leslie (C.C.) 27 F. 22, the publisher of the 'Chatterbox' was allowed to restrain the publication of 'Frank Leslie's Chatter box.' In N. K. Fairbank Co. v. Luckel, King & Cake Soap Co., 102 F. 327, 42 C.C.A. 376, the Circuit Court of Appeals in the Ninth Circuit granted an injunction because 'Gold Dust' and 'Gold Drop' were so similar that the public was likely to be misled. And in Stephens v. Peel, 16 L.T. N.S. 145, a competitor of 'Stephens Blue Black Ink' put on the market 'Steelpens Blue Black' ink, and was restrained on the ground that he infringed."

In the only other case where the right of the plaintiff to use the name "Parcheesi" was challenged, the court said: "It seems plain that to permit the defendant to make and sell this article under the name 'Parcheesi' will legalize a fraud upon complainants' rights." Selchow v. Chaffee & Selchow Mfg. Co., C.C., 132 F. 996, 999.

Defendant threatens to put its game on the market at a price which would be only one-third or one-fourth of the price which plaintiff charges. Defendant contemplates selling largely through the five-and-ten cent stores. Business concerns which purchase games for the holiday trade usually put in their orders during August and September, and great damage would undoubtedly by done to the plaintiff if defendant were permitted to sell their game pending the outcome of this suit.

A temporary injunction may be issued, upon the plaintiff giving bond in the sum of twenty-five hundred dollars to protect the defendants from all damage and costs which may be adjudged against the plaintiff in this cause by reason of any wrongful and improvident issue of an order for a writ of preliminary injunction.