### WEINER et al. v. NATIONAL TINSEL MFG. CO.

#### No. 327.

District Court, E. D. Wisconsin.

Dec. 2, 1940.

Thiess, Olson & Mecklenburger, of Chicago, Ill., and Lines, Spooner & Quarles, of Milwaukee, Wis., for plaintiffs.

Strauch & Hoffman, of Washington, D. C., and Ralph W. Brown, of Milwaukee, Wis., for defendant.

DUFFY, District Judge.

In 1915, Charles Weiner, one of the plaintiffs herein, started the business known as the Chicago Printed String Company. In 1919 a partnership, of which he was one of the members, took over the business. Thereafter a corporation was formed, and that in turn was succeeded by a partnership. In 1936 the plaintiffs herein, as a partnership, succeeded to, and at the time of the commencement of this action, owned and operated the business of the Chicago Printed String Company.

Since 1915 this company has continuously engaged in the manufacture and sale of advertising tape, used for tying packages. It is a flat ribbon-like cotton tape upon which the user may cause its name to be printed with accompanying advertising matter. The tape is made in two grades, the cheaper or coarser grade being known as "Print-Ad-String" and the finer grade being known as "Ribbonette."

From a small beginning the business has developed so that this company now has 28,000 customers on its books; it employs 30 salesmen who at least twice a year cover every city in the country of 5,000 population or more; it has 300 jobber customers; and in addition it carries on a direct mail advertising campaign.

In 1915 there were other manufacturers of package-tying advertising tape. The product was generally known in the trade as "advertising tape." At that time most merchants in this country used common string in tying packages. Weiner originated the name "Ad-String" and adopted the name "Print-Ad-String" as a trade-mark. The Chicago Printed String Company caused this name to be registered as a trade-mark in the United States Patent Office, under date of February 15, 1927, pursuant to the Act of February 20, 1905, registration certificate number being 224,-032. In 1917 Weiner adopted the trade-mark "Ribbonette" for the finer grade of package-tying tape and that name was registered on October 23, 1917, under the same 1905 Act, registration certificate number being 119,150. This trade-mark was renewed in 1937.

The Chicago Printed String Company has carried on an extensive advertising campaign throughout the years. For the last five years, more than $25,000 per year has been expended in such campaigns, and as a result, a large volume of business has developed, and the trade-marks "Print-Ad-String" and "Ribbonette" are generally and widely known to the trade and consuming public.

About May 1, 1940, the defendant started to sell flat ribbon-like tape under the names of "Tye-Ad-String" and "Ribbontye." Its coarser grade, corresponding to the plaintiffs' coarser grade "Print-Ad-String," was designated "Tye-Ad-String," and its better grade was designated "Ribbontye" corresponding to plaintiffs' "Ribbonette." Likewise defendant printed the name "Ribbontye" in script which was quite similar in appearance to the script oftentimes used by the plaintiffs in advertising "Ribbonette."

It appears from the affidavits of several of the leading competitors of the plaintiffs that the names "Print-Ad-String" and "Ribbonette" are well known throughout the trade and that these names signify the products of the Chicago Printed String Company and no other. No other company or concern has at any time challenged the plaintiffs' exclusive rights to either of the trade-marks "Print-Ad-String" or "Ribbonette" except in three instances by companies which at such times employed one William A. Elbers. In 1929 this court enjoined Mr. Elbers and others from competing unfairly with the Chicago Printed String Company by selling and distributing spool holders in colorable imitation of spool holders sold by the Chicago Printed String Company. In 1932 the Milwaukee Printed String Company, with which Elbers was associated, started to use the name "Ribon-sette" but discontinued such use upon demand by plaintiffs' predecessors. In 1937 Elbers was employed by the Standard Tye-tape Company of Asheboro, North Carolina. Shortly thereafter that company, trading as United Printed String Company, brought out an advertising tape called "Tie-Ad-String." Upon complaint by the plaintiffs, this practice was discontinued. Then Mr. Elbers was employed by the defendant herein, and within a few months thereafter that company commenced to market advertising tape under the names "Tye-Ad-String" and "Ribbontye."

At the time of the commencement of this action, the plaintiffs were the owners of the trade-marks and registrations hereinbefore described, and also of the business and good will connected with said trade-marks.

This suit is based upon trade-mark infringement and unfair competition. The matter now before the court is the motion of the plaintiffs for a temporary injunction pendente lite.

■ The defendant contends that the plaintiffs' trade-marks are invalid on the ground that they are descriptive. There is, of course, a strong presumption of validity. A strong presumption of validity arises from registration of these marks in the United States Patent Office. Feil v. American Serum Co., 8 Cir., 16 F.2d 88; Alfred Schneier Co., Inc. v. Sam Bramson, D.C., 16 F.Supp. 493; Detroit Motor Appliance Co. v. Burke, D.C., 4 F.2d 118.

■ The trade-marks in question were established in the trade after many years of effort. The late comer in such an established field is under a special duty to avoid confusion. Northam Warren Corp. v. Universal Cosmetic Co., 7 Cir., 18 F.2d 774.

"Print-Ad-String" is a trade-mark for a flat ribbon-like tape of glued cotton yarn, sometimes printed and other times not printed, and would appear to be suggestive, rather than descriptive. The same is true of "Ribbonette." While defendant contends this is merely a dictionary word, coupled with a suffix meaning little or small, and while such name might signify a small rib-

bon, yet there is nothing in the combination itself that signifies an advertising package-tying tape made of glued cotton yarn. At this stage of the proceedings at least, it would appear that at the time the names were adopted, they would have no meaning to the purchasing public as referring to advertising tape.

It is not necessary at this time to pass on the validity of the trade-marks because it would appear under all of the circumstances appearing from the record that the defendant has been conducting unfair competition. It will be noted that the defendant used the three syllable, hyphenated form "Tye-Ad-String" for the coarser grade which corresponded to plaintiffs' coarser grade "Print-Ad-String." For its better grade, it used one word with "ribbon" dominant, just as plaintiffs for many years have done in designating their better grade.

While it cannot ordinarily be said that a plaintiff is entitled to an interlocutory injunction as a matter of strict right, yet the application is addressed to the sound discretion of the court. Rice & Adams Corp. v. Lathrop, 278 U.S. 509, 514, 49 S. Ct. 220, 73 L.Ed. 480. Each case must stand upon its own facts. Nims on Unfair Competition and Trade-Marks, 3d Ed., pp. 613–616, 858; Manitowoc Malting Co. v. Milwaukee Malting. Co., 119 Wis. 543, 97 N. W. 389.

The Court of Appeals of this circuit has recently passed upon the duties of the District Court on a motion for preliminary injunction in a trade-mark and unfair competition case. Selchow & Righter Co. v. Western Printing & Lithographing Co. et al., 7 Cir., 112 F.2d 430.

As I am of the opinion that a denial of the plaintiffs' motion will result in great injury to them and in the defendant getting substantial advantage to which it would be entitled only as a result of a final adjudication in his favor, the preliminary injunction should therefore be granted, provided the defendant's interest can be protected by an indemnifying bond.

A temporary injunction may be issued upon the plaintiffs giving bond in the sum of $5,000 to protect the defendant from all damage and costs which may be adjudged against the plaintiffs in this cause by reason of any wrongful and improvident issue of an order for a writ of preliminary injunction.