## COLSON CORPORATION, ELYRIA, OHIO, v. PIERCE MFG. CORPORATION, ANGOLA, N. Y.

### Civil No. 623.

District Court, W. D. New York.
March 15, 1941.

Kenefick, Cooke, Mitchell, Bass & Letchworth, of Buffalo, N. Y. (Thomas R. Wheeler, of Buffalo, N. Y., of counsel), for complainant.

Bean, Brooks, Buckley & Bean, of Buffalo, N. Y. (Richard W. Treverton and Edwin T. Bean, both of Buffalo, N. Y., of counsel), for defendant.

KNIGHT, District Judge.

Each of the parties is now and has been for many years engaged in the manufacture of tricycles and other types of kindred items. This suit is brought to restrain the advertising for sale, sale or offering for sale by the defendant of a tricycle claimed to be similar in model or design to a certain tricycle heretofore manufactured, advertised and sold by the complainant. No patent or patented parts are here involved, and no registered trade mark is involved, though the complainant since 1939 has used the word "Trike" in connection with its own corporation name as a designating emblem on its tricycles. Unfair competition is charged.

The complainant's first type of a chain driven tricycle was developed in 1930 and showed a frame consisting of tubing with two semi-plate steel uprights attached to the seat post mast and leading to either side of the rear axle. Minor changes in certain features of this tricycle were made from time to time down to 1939. The chain guard was then entirely enclosed, where theretofore it had been only partially so, and the support for the seat mast was made in a "U" shape. The tubing

then used in this and the other part of the frame was 1″ in size. Early in 1940 the tricycle in question was manufactured and sold. This differs from the 1939 product in the respect that the tubing in the frame was 1¼″ in diameter and, further, as complainant asserts, that the rear axle was housed. The defendant, however, has submitted as an exhibit a tricycle purported to have been made by complainant before 1940 showing the rear axle housed.

In the fall of 1940 the defendant put out its tricycle in question. This bears the name plate "Emblem" and the maker's name and business location. It is the claim of the complainant that the design of the two products is substantially the same; that the defendant's product differs from the complainant's only with respect to the number of spokes in the wheel, a one-piece pedal crank instead of three-piece and fractional difference in design of the chain guards and the different hubs used on the wheels. It, however, now appears that defendant's product differs from that of the complainant in several other details than those hereinbefore enumerated.

The complainant seeks a temporary injunction pending trial of the issue herein.

Both designs show two curved tubes 1¼″ in diameter, one extending from the head of the frame to the seat and supporting the hanger for the pedal crank and the other inverted "U" shape tube member connecting such other tube to the rear axle. Both show the rear axle entirely enclosed. One difference in the frame is that the "U" shaped member in the plaintiff's product is welded to the rear face of the main tube while the defendant's product has two rear arches butt welded to the main tube. The general contour of each is the same.

■ The basis for this suit is that the defendant has manufactured and intends to manufacture in commerce in the United States a tricycle so simulating the design of the complainant's tricycle that the public will be deceived in believing and accepting it as the complainant's product. If the facts sustain this claim, complainant will be entitled to the relief sought. Unfair competition "is nothing but a convenient name for the doctrine that no one should be allowed to sell his goods as those of another." Vogue Co. v. Thompson-Hudson Co., 6 Cir., 300 F. 509, 512. It is based on the equitable doctrine of fair dealing. "Unfair competition consists essentially of the conduct of a trade or business in such a manner that there is an express or implied representation that the goods or business of one man are the goods or business of another." Nims Unfair Competition and Trade Marks, Sec. 4 page 19, quoting 28 American & Eng.Ency. page 343. "The foregoing principles of law do not apply alone to the protection of parties having trade-marks and trade-names. They reach away beyond that, and apply to all cases where fraud is practiced by one in securing the trade of a rival dealer; and these ways are as many and as various as the ingenuity of the dishonest schemer can invent." Nims, page 17, sec. 4, quoting Weinstock, Lubin & Co. v. Marks, 109 Cal. 529, 42 P. 142, 146, 30 L.R.A. 182, 50 Am. St.Rep. 57. It is equally a principle of law, however, that "if defendant so conducts its business as not to palm off its goods as those of complainant, the action fails." Nims, p. 16, sec. 4, quoting Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U.S. 118, 25 S.Ct. 609, 614, 49 L.Ed. 972.

"Usually, when invoked, market competition is present. It is not essential, however." Reconstruction Finance Corp. v. J. G. Menihan Corp., D.C., 22 F.Supp. 180, 183. No market competition is shown. The threat of competition is sufficient.

■ The power of the court to issue preliminary injunction in a case involving a charge of unfair competition should be exercised with great caution. It should not ordinarily be granted unless "the right thereto is clear and free from reasonable doubt * * *." 63 C.J. 553; and cases cited. The authorities on this proposition are uniform and numerous.

■ Selchow & Righter Co. v. Western Printing & Lithographing Co., D.C., 29 F. Supp. 569; Canadian Club Corp. v. Canada Dry Ginger Ale, 46 F.2d 964; Ross v. Neuville, D.C., 34 F.Supp. 466; American Mercury v. Kiely, 2 Cir., 19 F.2d 295; Murray Hill Restaurant, Inc., v. Thirteen Twenty One Locust, 3 Cir., 98 F.2d 578; New York Asbestos Mfg. Co. v. Ambler Asbestos Air Cell Covering Co., 3 Cir., 102 F. 890. "A rule of law cautions us to proceed with great deliberation where the injunction pendente lite will in effect determine the litigation, and give the party seeking the relief the entire relief which is prayed for in the final decree." American Mercury v. Kiely, supra [19 F.2d 297]. Citing Best Foods, Inc., v. Hemphill

Packing Co., D.C., 295 F. 425, and other cases.

■ The case presents a close question. The defendant first went into production of the type of tricycle in question in 1940. It already appears this was subsequent to the production of the complainant's tricycle here involved. As stated, the complainant had been making tricycles for years preceding that date. The outline of the frames of tricycles here in suit is comparably the same. A detailed examination and measurement of the various parts in each with reference to the height from the floor and the distances of the parts from each other in each product show them to vary only slightly. Each has $1\frac{1}{4}''$ tubular frame, chain guard on top and bottom, and housed rear axle. All these things go to show similarity in outline.

The so-called Rollfast machine, built before 1940, did not have the enclosed rear axle. The so-called Skippy tricycle made in 1937 shows a slightly different bend in the main tube but a rear axle enclosed in a housing, chain guard on both top and bottom and the U-shape support for the main tube with the same method of attachment thereto as shown in the complainant's product. The Skippy tricycle of 1940 (Gendron), so far as the parts here are concerned is like that of 1937, except that the outline of the main tube more nearly corresponds to that of the complainant's product. Various other types of tricycles have been shown, none of which, however, shows in combination a comparable frame design, rear axle connection and housing, and chain guard top and bottom. None of the products above mentioned have been shown to have a $1\frac{1}{4}''$ tubular frame. The defendant submits an affidavit that the Junior Toy Company of Hammond, Indiana, used a $1\frac{5}{16}$-inch diameter frame in 1938 in its child's vehicle, and that many toy manufacturers used this size tubing in 1939. Plaintiff does not deny this but says that the Junior Toy Company used this in an ordinary velocipede rather than in a chain drive tricycle. If it was used in comparable structures, it has a bearing upon the question of whether plaintiff's product shows a distinctive frame design. Attention has been called to the difference in various parts of the two products and that certain parts are functional. The matters may have a bearing upon the question of distinction in design.

It seems that a case is presented where a decision which is almost decisive of the issue should not be made upon affidavits alone and that a fuller opportunity should be made for presentation of proofs. The complainant urged the granting of a preliminary injunction because the exhibition of defendant's product at American Toy Fair, commencing March 10, 1941, in New York, N. Y., would lead to "inestimable difficulty and damage to the complainant." It was urged that it was of primary importance that a temporary injunction be granted for that reason. The final papers upon this motion were not submitted to the court until March 10 instant, and there was, therefore, no opportunity to restrain the exhibition at that fair.

Nothing is said relative to the written communication by one alleged to be connected with the defendant company in which it is claimed that he stated, in effect, that complainant's product was copied in the defendant's product. What relationship this individual has to the defendant can be fully presented upon the trial and the question of any admissions then considered.

It would seem that it will not be necessary to present a large volume of evidence in addition to that connected with the exhibits already in evidence and that the trial could be speedily concluded. No reason is seen why a trial date can not now be fixed and the final issue determined reasonably soon.

The motion for preliminary injunction is denied.