**ADAM HAT STORES, Inc., v. SCHERPER et al.**

Civ. A. No. 305.

District Court, E. D. Wisconsin.

July 15, 1942.

Rogers, Woodson and Rogers, of Chicago, Ill., and Herbert L. Mount, of Milwaukee, Wis., for plaintiff.

David Charness, of Milwaukee, Wis., for defendants.

DUFFY, District Judge.

The plaintiff, a New York corporation, claims trade-mark infringement and unfair competition. Plaintiff's business was established in 1924. Its income from the sale of hats amounts to approximately $10,000,000 annually. Plaintiff's hats, bearing the trade-mark "Adam", are sold throughout the United States and in some foreign countries. It has its own stores in approximately 200 cities, each store being designated by a large sign reading "Adam Hats". It also sells its merchandise through approximately 2,000 additional stores throughout the country. It has spent large sums in advertising Adam hats. During the past ten years the advertising has principally been by sponsoring radio broadcasts of championship prize fights. Up until the past year, and after the time this action was commenced, plaintiff featured the price of its hats at $2.95 each. It also featured the words "The Bomber" and "Broadcast Special" as brand names for hats.

Plaintiff's trade-mark "Adam" was registered in the United States Patent Office as follows: " 'Adam Hats' for men's hats, on April 14, 1931; 'Adam' for men's hats on May 14, 1935." Plaintiff qualified to do business in Wisconsin on February 4, 1935, but did not open a hat store in this State until January 6, 1939, locating on Wisconsin Avenue in Milwaukee, under its corporate name "Adam Hat Stores, Inc."

About October 15, 1935, the defendant Scherper opened a store in Milwaukee, under the name of "Adams Hat and Shirt Shop". He featured "Adams" hats at $2.95. He caused the defendant corporation to be organized on January 31, 1936, and the business is now managed by Scherper and owned by the corporation. The defendants adopted the words "Broadcast Special" and "The Bomber", as brand names for hats. From time to time, and especially just prior to championship prize fights, pictures of prize fighters were featured in their store window. Clerks in the store represented to customers that defendant corporation was sponsoring the radio broadcasts of the prize fights. Customers purchased hats from the defendant corporation believing that it was sponsoring the prize fight broadcasts.

Plaintiff asks that defendants be enjoined from (a) using the name "Adams" in their corporate name or business style; (b) using the names "Adams" or "Adam" or any like name as a brand name or trade-mark for hats and other men's wearing apparel; and (c) otherwise infringing plaintiff's trade-mark and competing unfairly with plaintiff.

Defendants, by a counterclaim, seek to enjoin the plaintiff from using the name "Adam" in the State of Wisconsin.

At the time defendant Scherper opened his store in 1935 and adopted the name "Adams" as a brand name for hats, plaintiff had a well-established business, operating in various eastern States, and as far west as Detroit, Michigan. The business was rapidly expanding. Although plaintiff qualified to do business in Wisconsin in February, 1935, it was not in fact doing business in this State at the time defendant opened his store in October of that year. Defendant Scherper visited New York in 1926, 1927, 1928, 1929, 1930, and 1931, buying hats for his then employer. He dealt with manufacturers having offices and stores in that part of the city known as the hat district. The store of the plaintiff was in a prominent location in that district on Broadway. In the front of the store was a large sign advertising "Adam Hats". In dealing with the Arkin Hat Company and others mentioned by defendant Scherper, he would of necessity have to pass the doors of the plaintiff's store and offices. The merchandise in the window of this store was so displayed that it customarily attracted much attention from buyers of hats. The statement of Mr. Scherper that in October, 1935, he never had heard of the plaintiff or the brand name "Adam" is quite incredible.

The question for decision is whether the defendants had the right to adopt and use the word "Adams" as a trade-mark for hats and as a part of their corporate name, in view of the fact that the plaintiff had a registration of the trade-mark "Adam" for hats and had a large established business which was rapidly expanding, and the State of Wisconsin and the City of Milwaukee were within its natural territory.

Defendant relies upon the doctrine that the second user of a trade-mark, in territory not already occupied by the first user of the mark, is entitled to that terri-

tory. Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713, United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141. This rule of law was adopted before the days of extensive national advertising, especially by means of radio. It established that where plaintiff was doing a local business, it could not enjoin a defendant in a wholly removed territory where the plaintiff was not selling and where the people had not heard of the plaintiff's trade-mark. A more modern conception is expressed in the recent case of Brass Rail, Inc., v. Ye Brass Rail of Massachusetts, Inc., D.C., 43 F.Supp. 671, where the court enjoined the use of the name "Brass Rail" by a restaurant in Boston in view of the plaintiff's having previously established a restaurant under a similar name in New York. The court there said at page 672 of 43 F.Supp.: "* * * From the different characters of the businesses, it cannot be said that they actually compete with one another. This is, however, no longer the essential test for injunctive relief under the doctrine of unfair competition. Such relief will be afforded where there is a possible danger to reputation and credit arising from a confusion of identity where the parties are engaged in a business of a kindred character. * * *"

In any event, even under the old rule there was a well-established exception that the second user must have innocently adopted the mark and must show it was not adopted for the purpose of forestalling the first user's extension of his mark in that territory. Sweet Sixteen Co. v. Sweet "16" Shop, Inc., 8 Cir., 15 F.2d 920; R. H. Macy & Co. v. Macys, Inc., D.C., 39 F.2d 186. In the Hanover Star Milling Co. case, supra, the court said at page 420 of 240 U.S., at page 363 of 36 S.Ct., 60 L.Ed. 713: "* * * We are not dealing with a case where the junior appropriator of a trade-mark is occupying territory that would probably be reached by the prior user in the natural expansion of his trade, and need pass no judgment upon such a case. * * *"

This court stated in Weiner et al. v. National Tinsel Manufacturing Co., D.C., 35 F.Supp. 771, 772: "The trade-marks in question were established in the trade after many years of effort. The late comer in such an established field is under a special duty to avoid confusion. Northam Warren Corp. v. Universal Cosmetic Co., 7 Cir., 18 F.2d 774."

In a case decided on the basis of unfair competition this court said in Horlick's Malted Milk Corp. v. Horlick et al., D.C., 40 F.Supp. 501, 502: "* * * In an action on unfair competition, however, an allegation of fraud is not necessary. It is the passing off of one man's goods as those of another which constitutes the unfair competition. * * * If the proof should disclose that the public has been deceived by the defendants by passing off their goods for those of the plaintiff, then the fraud would be presumed."

■■ The use by the defendants of the word "Adams", while slightly different from the plaintiff's mark "Adam", was at least a colorable imitation of plaintiff's trade-mark. The trade-mark statute (15 U.S.C.A. § 96) provides: "* * * Any person who shall, without the consent of the owner thereof, reproduce, counterfeit, copy, or colorably imitate any such trade-mark * * *."

Our inquiry should, therefore, be directed as to whether the defendants' choice of the name "Adams" was in good faith. The defendant Scherper claims he knew nothing of the plaintiff or its mark at the time he opened his store in Milwaukee. It is impossible of course for the plaintiff to prove the state of mind of the individual defendant. It might of course be possible that it was a pure coincidence the defendant adopted the name "Adams". However, there was no one by the name of Adams who was interested in defendants' business. I cannot overlook the numerous visits of the defendant Scherper to the New York hat district from 1926 to 1931. Certainly the use of the slogans "Broadcast Special" and "The Bomber" were not a coincidence. There was a deliberate misrepresentation to customers which resulted in a palming off of defendants' hats as the hats manufactured and sold by the plaintiff. Furthermore, the use of the phrase, "Adams Famous Hats" on the first shipment of hats which the defendant Scherper received prior to the time defendants' merchandise could have possibly attained any fame or reputation is certainly significant. These circumstances all lead to the inescapable conclusion that the adoption by defendants of the name "Adams" was not in good faith.

■ The applicable principle was stated by the Wisconsin Supreme Court in J. I. Case Plow Works v. J. I. Case Threshing

Machine Co., 162 Wis. 185, 201, 155 N.W. 128, 134: "The legal principles which are controlling here are simply the principles of old-fashioned honesty. * * *" The same court, in Listman Mill Co. v. William Listman Milling Co., 88 Wis. 334, at page 342, 60 N.W. 261 at page 263, 43 Am.St.Rep. 907, said: "* * * Nor is it necessary to prove intentional fraud. If the court sees that the plaintiff's trade-marks are simulated in such a manner as probably to deceive customers or patrons of its trade or business, the piracy should be checked at once by injunction. * * *"

An important principle that must be considered is the protection of the purchasing public. The courts look as much to what the defendant is doing as to what his intent may be. That protection of the public interest is an important factor in granting relief was recognized by the Wisconsin Supreme Court in Wisconsin White Lily Butter Co. v. Safer, 182 Wis. 71, 195 N.W. 700.

The defendants should not be permitted to use "Adams" or "Adam" in connection with the sale of hats. If defendants desire to continue the sale of hats in the future, the decree may enjoin the use of "Adams" or "Adam" or other closely similar name. The defendants, their employees, and agents may also be enjoined from the use of the terms "The Bomber" and "Broadcast Special" in connection with the sale of hats; and they may also be restrained from representing to the public that the corporate defendant is the sponsor of radio broadcasts of prize fights or boxing exhibitions over national radio hookups.

In the closing pages of defendants' brief, the question of jurisdiction is raised. Of course this issue must be met, and more logically should have been discussed in the beginning of this opinion. However, I have discussed the issues in the same order as presented in the briefs.

Defendants contend (1) that they have made no interstate use of the mark "Adams" or the related trade name, so that no jurisdiction attaches by reason of the Federal Trade-Mark Statute, 15 U.S.C.A., § 92; and (2) that this court has no jurisdiction of plaintiff's case in unfair competition by reason of plaintiff's failure to prove damages of $3,000 or more.

Did the defendants use the trade-mark "Adams" or a colorable imitation thereof in interstate commerce? Defendant did not sell hats outside of Wisconsin. However, the hats which defendants purchased, bearing the mark "Adams" either imprinted on the leather sweatband or appearing in the lining of the hat, were all shipped into Wisconsin from other States. Defendants earnestly contend that so long as they did not ship or sell hats across the State boundary, they did not use the hats in interstate commerce, and they strongly rely on Pure Oil Co. v. Puritan Oil Co., D.C., 39 F.Supp. 68.

Much of the force of defendants' argument is lost, however, because the Pure Oil case, supra, has been reversed in a recent decision. Pure Oil Co. v. Puritan Oil Co., 2 Cir., 127 F.2d 6. Under the authorities, I believe that we have in the case at bar a use of a colorable imitation of plaintiff's mark in interstate commerce.

Under the rule in Hurn et al. v. Oursler et al., 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148, plaintiff's claim for unfair competition could be here joined with the claim of trade-mark infringement irrespective of diversity of citizenship or the jurisdictional amount.

However, in this case, diversity of citizenship exists and the testimony establishes the value of $1,000,000 to plaintiff's right to the exclusive use of the name "Adam" in connection with hats. The alleged wrong affects the value of petitioner's good will in business. Coca-Cola Co. v. Brown & Allen, D.C., 274 F. 481.

It is my conclusion that both jurisdictional grounds, as alleged in the complaint, have been established. The injunction may issue as hereinbefore indicated, and the counterclaim of the defendants will be dismissed.